THE STATE v. JOHN GRUBBS, Appellant.

Division Two, December 20, 1926.

1. **DEMURRER TO EVIDENCE: Waiver.** A demurrer to the evidence offered at the close of the State's case is not for review on appeal where defendant proceeds to put in his own evidence, but is thereby waived.

2. **SEARCH: Without Warrant.** Where a strong probability of defendant's connection with the proven burglary and larceny exists, officers empowered to make arrest have a right to arrest him, and then search his premises, for the goods stolen, without a search warrant, and to testify what portion of the stolen property they thereby found.

3. **SEARCH WARRANT: Motion to Suppress.** To exclude from admission as evidence stolen property obtained by officers in a search of defendant's

premises, claimed to have been taken from his possession under an illegal search warrant, he should file a motion to suppress the evidence thereby secured, and ask for a preliminary hearing on his motion.

4. SEARCH WARRANT: Oral Evidence: Admitted without Objection. Testimony of a special agent that he and an officer made a search of defendant's premises under a search warrant in the hands of an officer having been admitted without objection, appellant cannot complain that the proof of the existence of the warrant was oral.

Corpus Juris-Cyc. References: Arrest, 5 C. J., Section 30, p. 399, n. 78; Section 37, p. 410, n. 51; Section 74, p. 434, n. 84. Burglary, 9 C. J., Section 59, p. 1035, n. 25. Criminal Law, 16 C. J., Section 2297, p. 934, n. 58 New; 17 C. J., Section 3328, p. 50, n. 48; Section 3331, p. 56, n. 16; Section 3332, p. 60, n. 57; p. 62, n. 93; Section 3336, p. 71, n. 47; Section 3337, p. 74, n. 90; Section 3343, p. 78, n. 49; p. 79, n. 63; Section 3557, p. 211, n. 4; Section 3667, p. 326, n. 80. Larceny, 36 C. J., Section 264, p. 810, n. 3.

Appeal from Christian Circuit Court.—*Hon. Fred Stewart*, Judge.

AFFIRMED.

*Moore & Moore* for appellant.

(1) Evidence, oral in character, that a search warrant was issued in Oklahoma, to search the residence of the defendant, and that such residence was searched thereunder, is reversible error, as the same is the proof of a judicial record, by oral evidence, without a showing made, that the evidence (original) was lost or destroyed, or not capable of being produced by properly authenticated copies. State v. Shirley, 233 Mo. 335; State v. Dougherty, 106 Mo. 182; Wharton's Crim. Evidence (8 Ed.) p. 129; Hess v. State, 202 Pac. 310; Sugar Valley Land Co. v. Johnson, 85 So. 871. (2) As a general rule, on trial for burglary and larceny, the State cannot prove the commission by defendant of other crimes of like character not in any way connected with the offense charged in the information, and evidence thereof is prejudicial. State v. Hale, 156 Mo. 102. However, if both offenses are in reality parts of the same transaction, or otherwise connected, or go to show the whereabouts of defendant at the time of the alleged offense charged, or tend to connect defendant with the crime charged, then such evidence is admissible. State v. Tookey, 203 Mo. 674; State v. Bates, 182 Mo. 70; State v. Sherman, 264 Mo. 374; State v. Hyde, 234 Mo. 200. And to bring evidence within the exception to the general rule there must be some connection between the two offenses, nor can the same be justified on the theory of guilty knowledge.

*North T. Gentry*, Attorney-General, and *Alexander M. Meyer*, Special Assistant Attorney-General, for respondent.

(1) The evidence, though circumstantial, was sufficient. The breaking of the building described, the carrying away of the property

described from the building, and the ownership of both were shown, It was shown that defendant had been in recent and unexplained possession of many articles taken from the building which were traced from the defendant to the officers who recovered them, and from the latter to the prosecuting witness, who positively identified them by private marks. Other goods found in the possession of defendant and in the house where he had lived at the time of the robbery, were shown to fit the description of goods taken from the burglarized building. The theory of the State as to the plan and means by which the crime was carried out was consistent throughout and with the evidence. The defendant offered no theory of his own and the jury were at liberty to adopt that of the State. (2) No error was committed by the court in admitting evidence of the finding of some of the property alleged to have been stolen in defendant's home in Sapulpa, under a search warrant. (a) Defendant waived his objection, if any, to the manner in which the evidence was acquired and to the form of the search warrant by failure to file a sufficient and timely motion to suppress evidence. State v. Pomeroy, 130 Mo. 498; State v. Sharpless, 212 Mo. 176; State v. Owens, 259 S. W. 102. Defendant knew of the search of his home and was present at the time and knew, therefore, that the evidence existed and cannot plead surprise. (b) Rules governing admission or rejection of evidence are those of the forum, and the law of Oklahoma, even had it been invoked by a proper manner by appellant, is inapplicable. This rule extends to all matters of procedure. Dicey's Conflict of Laws (2 Ed.) p. 708. (c) The oral objections to the admission of evidence in question were not germane to the objection now made that the search warrant was a judicial document which could not be proved by parol; hence objections to the admission of the evidence on this ground have been waived.

RAILEY, C.—On January 8, 1926, the Prosecuting Attorney of Christian County filed in the circuit court of said county a verified information, which, omitting formal parts, reads as follows:

"Omer E. Brown, Prosecuting Attorney within and for the County of Christian in the State of Missouri, informs the court that on or about the —— day of February A. D. 1925, at the said County of Christian, State aforesaid, John Grubb (*alias* John Foster) did then and there into a certain store, shop and building of the J. W. Clemons & Son Hardware Store, a partnership composed of J. W. Clemons and Leslie Clemons, there situate and being, feloniously and burglariously, forcibly did break and enter, with felonious intent then and there and thereby to feloniously and burglariously steal, take and carry away certain goods, wares and merchandise and other valuable things the personal property in said store, shop and building,

then and there kept and deposited in the said store, shop and building, two Ever-ready flash-lights of the value of $2, two Yale flash-lights and batteries of the value of $5, and Yale and Ever-ready bulbs of the value of $1 and W. R. Case & Sons pocket cutlery of the value of $10, Remington pocket cutlery of the value of $5, safety razors of the value of $5, silverware of the value of $10, hack-saw blades and hack saws of the value of $5, one double-barrel shotgun of the •value of $20, of the personal goods of J. W. Clemons & Son, a partnership in the said store, shop and building, then and there found, then and there feloniously and burglariously did steal, take and carry away with felonious intent then and there to permanently deprive the owner of the use thereof against the peace and dignity of the State.''

Defendant waived formal arraignment and entered a plea of not guilty. Thereafter, on January 26, 1926, upon a trial before a jury, the latter returned into court the following verdict:

''We, the jury find the defendant, John Grubb, *alias* John Foster, guilty of burglary in the second degree and assess his punishment at seven years in the state penitentiary, and we further find the defendant, John Grubbs, *alias* John Foster, guilty of grand larceny, also, and in addition to the punishment for burglary we assess his punishment for the larceny at imprisonment in the state penitentiary for three years.''

Thereafter, on the following day, defendant filed his motion for a new trial, which was overruled, allocution granted, judgment rendered, sentence pronounced in conformity with the verdict, and an appeal allowed defendant to this court.

Counsel for respondent have made a full and fair statement of the evidence, as disclosed by the record, as follows:

J. W. Clemons testified that he lived in Sparta, Missouri, and had lived in that place for twenty-three years; that he was in the hardware-and-lumber business and owned a building in the city of Sparta, where he had a hardware store which he had operated for eight or ten years; that his son was in business with him; that he kept a general stock of hardware in this store, valued at six or seven thousand dollars; that the foregoing statements were true as of the ——— day of February, 1925, the date of the alleged crime; that during the February aforesaid, his store was burglarized and considerable goods taken, including pocket knives, flash-lights and flash-light supplies, safety razors and blades, shears, auger bits, cold chisels, punches, hack saws, racket braces, pliers and a shotgun; that the burglary and larceny occurred during the night following February 13th; that witness was in the habit of closing his store some time between seven and nine o'clock in the evening; that he kept the store locked with a Yale lock on the front door, and the back door was the only other entrance and that it was locked; that the front door was locked the

night before the alleged burglary, and that on the following morning witness found the front door, which was a double door, open; that it bore marks showing that bars had been inserted between the double doors forcing them apart so that the lock was sprung; that the right-hand door was standing ajar.

Witness further testified that he later recovered some of the stolen goods; that among the goods recovered was a pair of seven-inch shears, which had been taken from his store and that when recovered both blades had been broken off; that these shears had witness's price mark on them; that other of his property was recovered by him in Springfield at the house of one Sampey, chief of detectives at that place; that among the goods so recovered was a case of auger bits in a wooden box and that the box bore witness's private cost mark; that this was about a week after the "robbery;" that some flash-lights were also recovered and were contained in a carton bearing witness's private cost mark; that he recognized his handwriting.

A pasteboard box was handed to witness and identified by him as the box in question and witness testified it had been taken from his store during the "robbery" on the night of the 13th.

Witness further identified several pocket knives as having been taken from his store and testified that he was present when the knives were found by Sheriff Turner of Christian County and other officers at the office of the special agent of the Frisco at Sapulpa, Oklahoma.

Witness further identified some safety razors as part of a lot which he had purchased from a certain firm called Rogers & Baldwin, and which had been in his store at the time of the crime. These had been returned to him through the same channels through which the knives had been recovered.

A flash-light, which had been recovered by witness at Springfield after the robbery, together with the box above mentioned, was identified as being of the same size and make as some of the flash-lights taken from witness's store.

On re-direct examination witness testified that the property which he had identified had been turned over to Mr. Turner by officers in Sapulpa, and that the crime in question was committed in Christain County, Missouri.

Mrs. Gertrude Knab testified that she and her husband lived at 1316 Washington Avenue, Springfield; that they owned another piece of property also during February, 1925, which was rented to a man identified by the witness as the defendant on a day between the first and the fifteenth of February, for a consideration of fifty-five dollars for one month, and that the defendant, in renting the house, gave his name as John Foster. The house so rented was located at 523 East Division Street about a block and a half from her residence. Witness testified that the contract of rental was made on Saturday,

at which time defendant made a deposit, and that he paid the remainder of the rent on the following Thursday, at which time he told her that he had that day moved into the property; that defendant came to her home on both occasions; that she saw a woman and child as well as defendant at the house she had rented him, and that the house was vacant in about ten days afterwards, and before the month, for which rent had been paid, had expired.

Re-examined, witness testified that at the time she rented the house to defendant he said that five or six people would occupy it; that she was enabled to fix the approximate date of renting the house to defendant as in the forepart of February because she and her husband had lived there until the 6th of January preceding.

Doctor Henry Knab corroborated the testimony of the previous witness as to matters within his knowledge, and testified that the people who rented the house had a Buick sedan.

Ernie Stapp testified that he had stolen, from a Chevrolet car belonging to him, a set of automobile license tags. His testimony was withdrawn from the consideration of the jury.

Al Franklin, of the Springfield police department, testified that he was a plain-clothes man; that he saw the license tags alleged to have been stolen from the previous witness, on a Buick sedan at a place on Division Street in Springfield and that this car was afterwards found wrecked at another place. This testimony was withdrawn from the consideration of the jury. Witness further testified that he again visited the house at 523 East Division Street about the 18th of February and found there some auger bits, flash-lights and razor blades and the pasteboard box previously identified by the witness Clemons as having been taken from his store; that the auger bits were in a wooden box with a cost mark on them and that the house had been vacated at that time.

Mrs. Forbes testified that she lived at 850 North Jefferson, about the length of the court-room from the house at 523 East Division Street, and lived there in February, 1925; that the latter place was inhabited during a part of February, but that the people left about the 18th of that month on Wednesday; that the tenants referred to had a closed car which was kept in a garage on the place; that on a Thursday previous some people drove up to the house in question in a car and next day the house was occupied. The following morning, that is, about three o'clock on Saturday morning, this car was driven up to the back door without any lights and there was only one light in the house—upstairs; that "they" unloaded things from this car for about an hour and that a light was turned on in the basement; that there seemed to be more than one person unloading goods from the car—"They were going in and out." This occurred between three and four o'clock on Saturday morning before the 18th, which

last date fell on Wednesday (dating the occurrence as of the morning of February 14th and the night following the 13th—the date of the burglary).

Witness further testified that she had seen a man whom she believed to be defendant in the house sitting at a table and in such a position that witness could see his face. This was at night. Witness further testified that she saw no one about the house after Wednesday, February 18th, and noticed that the garage doors were padlocked as they had not been before.

J. T. Boyd testified that defendant had come to his place of business in the Landers Building and contracted for an electric lighting service for a house at 523 East Division Street; that witness was contract agent for the Springfield Gas & Electric Company and that defendant signed the contract in question "John Foster," and that this occurred February 14th.

Al Sampey, chief of detectives of Springfield, testified that in February, 1925, about the 17th or 18th of the month, he accompanied two men called Mr. Franklin and Col. Truman to 523 East Division Street, and that they found some flash-lights and a carton and a box containing some auger bits and some perfume; that the people had moved out and that the goods described were scattered all over the place. Witness identified the pasteboard box previously identified by witness Clemons, as having been found in the house.

F. L. Bellew, special agent for the Frisco Railroad at Sapulpa, Oklahoma, testified that he and others searched the home of defendant, John Grubbs, located at 624 South Mound Street in Sapulpa, about the 22nd day of February, 1925, and that the search was made under a warrant in the hands of an officer named McDonald; that John Grubbs was there, and that the officers named found some shirts, socks, neckties, handkerchiefs, shoes, safety razors, a lot of knives, $1790 in American Express Money Orders, "taken from the Meramec Bank in Oklahoma," and two or three flashlights, some safety-razor blades and a dozen or two pocket knives. Cross-examined, witness testified that defendant John Grubbs had been employed by the Frisco Railroad in Sapulpa for about sixteen years at one time, but that he did not know whether defendant had been so employed during the two or three years last preceding the trial.

John Burnett, an agent for the Frisco Railroad, testified that he was a member of the party which searched the home of defendant Grubbs in Sapulpa with Marshall McDonald. Witness substantially repeated the testimony of the previous witness.

H. A. Thompson was a member of the same search party and testified that the knives, safety-razor blades, ever-ready safety-razor blades and flash-lights found in Grubbs's home were delivered to the witness Clemons at the office of the witness Thompson in Sapulpa. The knives

included Case and Remington knives. Cross-examined, witness testified that the knives in question were turned over to Clemons by the witness men and that Clemons identified them as his property.

A. Jones testified that he was in the general mercantile business in Sparta, and that on the morning of the 14th of February he found a pair of shears about two inches in length with about an inch of each blade broken off, in a lard can sitting against the door of his store; that he sent them to Mr. Clemons, the hardware man, and that Clemons's store was about sixty feet from his home.

Defendant's evidence consisted of the testimony of two witnesses tending to show bad feeling between defendant and witness Bellew, and that Bellew had made some threats against defendant. This testimony was evidently introduced for the purpose of impeaching the credibility of the State's witness referred to, and no other evidence was offered by defendant.

The instructions, rulings of the court, etc., will be considered, as far as necessary, in the opinion.

I.  The information is based on the statute and is sufficient as to both form and substance. [Sec. 3297, R. S. 1919, as amended by the Laws of 1921, p. 196, and Sec. 3305, R. S. 1919; State v. Tipton, 307 Mo. 502, 507, 271 S. W. 55, 57; State v. Tracy, 294 Mo. 376-389, 243 S. W. 178; State v. Moten, 276 Mo. 356, 207 S. W. 768; State v. Burns, 263 Mo. 593-597, 173 S. W. 1070; State v. Blockberger, 247 Mo. 600, 153 S. W. 1031; State v. Moss, 216 Mo. 436, 438, 115 S. W. 1007.]

**Information.**

II.  The trial court is charged with error, in failing to sustain appellant's demurrer to the evidence at the conclusion of the State's case.  It is a little surprising that this contention should be urged here, in view of the numerous decisions of this court holding it to be without merit.  After the court had overruled defendant's demurrer to the evidence at the conclusion of the State's case, appellant, instead of standing on his demurrer, put in his own evidence and thereby waived his right to be heard on the same.  Our ruling in this respect has become hornbook law in this State. [Melican v. Whitlow Const. Co., 278 S. W. 363; State v. Crunkleton, 278 S. W. 985; and cases cited; Kaemmerer v. Wells, 299 Mo. 262, and cases cited; Ehrlich v. Mittelberg, 299 Mo. 306 and cases cited; State v. Clinkingbeard, 296 Mo. 34, and cases cited; Canty v. Halpin, 294 Mo. 102; State v. Barker, 294 Mo. 317; Simpson v. Wells, 292 Mo. 315, and cases cited; Burton v. Holman, 288 Mo. 78, and numerous cases cited; State v. Mann, 217 S. W. 69, and cases cited; State v. Jackson, 283 Mo. 24, 222 S. W. 746; Cowan v. Young, 282 Mo. 46, 220 S. W. 869.]

**Demurrer to Evidence.**

The above assignment is without merit and overruled.

III.   In his brief, appellant asserts that none of the property taken from the possession of defendant at Sapulpa, Oklahoma, was shown to be the property of J. W. Clemons & Son, and described in the information.   This statement is incorrcet as shown by the record.   The evidence heretofore set out speaks for itself, and the testimony on behalf of the State clearly shows that some of the goods taken from defendant in Oklahoma belonged to the above partnership, was stolen from their store in Sparta, Missouri, in February, 1925, and is described in the information.

**Identified Property.**

The above contention is accordingly overruled.

IV.   It is claimed in appellant's brief that: "The court erred in allowing evidence of any article found in the home of defendant, as the search warrant was not produced, nor was there any record evidence of same, and the evidence of articles found in defendant's domicile was admitted on the oral evidence that his home was searched with a warrant."

**Search.**

The above contention is devoid of merit for several reasons:·

(1)   The *corpus delicti* is undisputed and clearly appears from the record.   The State produced substantial testimony tending to show a strong probability of defendant's connection with the burglary and larceny described in the information.   On the facts disclosed in this record, the officers mentioned in evidence had the legal right to arrest defendant at Sapulpa, Oklahoma, and search his premises without a search warrant.   [State v. Pinto, 279 S. W. 146; State v. Owens, 302 Mo. l. c. 356; State v. Peters, 242 S. W. 896; State v. Moore, 235 S. W. 1058; Pandjiris v. Hartman, 196 Mo. 539; State v. Cushenberry, 157 Mo. 168.]   There was not only sufficient probable cause to warrant the officers in arresting defendant and thereafter searching his premises for stolen property, but they actually did find in his possession some of the goods taken from the above store in Sparta, Missouri, and described in  the information.

(2)   If defendant thought his property was taken from his possession under an illegal search warrant he should have filed a timely motion to suppress the evidence secured thereby and asked for a preliminary hearing thereon.   [State v. Owens, 302 Mo. 358, and cases cited; State v. Tunnell, 302 Mo. 439; State v. Zugras, 306 Mo. 496.]   Having failed to meet the requirements of the law, as indicated in above authorities, he has no standing here in respect to said contention.

(3)   The only evidence relating to a search warrant was that given by F. L. Bellew, who testified that McDonald had a search warrant and he was acting with him.   This evidence was given without objection and, hence, the contention of appellant is without merit and overruled.

V.   Appellant in his brief asserts, that the court erred in admitting
evidence of property taken from a bank in Oklahoma, such
**Other** as express money orders, traveler's checks, etc.   Counsel
**Thefts.** for appellant asked that the above testimony be stricken
out, and the following occurred:

"BY THE COURT:   Gentlemen of the Jury, you will not consider
any evidence as to the shirts and other property not described in the
information.   You will disregard the testimony as to any property
not described in the information that was found in the possession of
the defendant."

No further action was taken by appellant in respect to said matter.
There is nothing here for review concerning same.

VI.   Finally, appellant complains of the court's action in threat-
ening to have defendant hand-cuffed if he did not desist from his at-
tempt to assault a witness in open court while testifying for the State.
The record does not disclose any provocation for defendant to assault
the witness.   No objection was made to the statement of the court,
nor was any exception saved.   The matter complained of, even if it
had any merit, is not properly before us for review.

VII.   The instructions given by the court were not objected to, and
properly declared the law.   No reversible error was committed in ad-
mitting or excluding testimony.   The case was properly tried, without
prejudice to defendant, and the latter was convicted upon substantial
evidence.

The judgment below is accordingly affirmed.   *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted
as the opinion of the court.   All of the judges concur.