STATE v. WILLIAM EMMETT SMITH, Appellant.—No. 40688.—209 S. W. (2d) 138.

Division Two, March 8, 1948.

*W. W. Sunderwirth, S. E. Osborn* and *Lee Crook* for appellant.

468

*J. E. Taylor,* Attorney General, and *Robert R. Welborn,* Assistant Attorney General, for respondent.

[139] BARRETT, C.—In July 1945 someone entered the Preston school, by prying a window open, and stole seven typewriters. The appellant, William Emmett Smith, was charged with the burglary and the larceny. He was acquitted of burglarizing the building but was convicted of stealing the typewriters and sentenced to two years' imprisonment. Upon this appeal consideration will be given to such of his assignments of error as were properly preserved for review and may now or hereafter bear meritoriously upon the cause.

On the 31st day of July 1945 the appellant and his wife were driving from El Dorado Springs to Kansas City in a 1940 Chevrolet automobile. As they approached Harrisonville in Cass County on Highway 71 a State Highway Patrol car signalled them to stop and one of the patrolmen ordered them to get out of the car with their hands up. As they obeyed the command Mrs. Smith's purse fell to the ground and one of the patrolmen picked it up. The purse felt exceptionally heavy and the patrolman opened it and found two loaded revolvers, a 32 automatic and an "owl head." The patrolmen then unlocked and opened a back door of the car. On the floor of the car, concealed under a blanket, they discovered seven typewriters. When asked what he was doing with the typewriters the appellant stated that he was a typewriter mechanic. One of the officers unlocked and opened the luggage compartment and there found their personal belongings and some tools. Upon discovering these articles the patrolmen took the appellant, his wife and the car to patrol headquarters at Lee's Summit in Jackson County where they were questioned at length concerning the typewriters. The appellant was unable to say where he worked as a typewriter mechanic and finally claimed that

he had purchased the typewriters from a man in El Dorado Springs. While they were being questioned the patrolmen made a further and thorough search of the car and its contents. In their baggage they found another pistol. Underneath the seat there was a pinch bar. Elsewhere in the car there were several screw drivers, a spatula, a ball hammer, a pair of soft-soled shoes with blank soles and among the appellant's effects a large number of miscellaneous keys. About eleven o'clock that night the patrolmen lodged Smith and his wife in the Kansas City jail. During the night, after the appellant and his wife had been lodged in the Kansas City jail, the patrolmen learned, from their Springfield office, of the burglary of the Preston school and the theft of the seven typewriters. The following morning Smith and his wife were returned to patrol headquarters and sometime during the day the sheriff of Hickory County appeared with a warrant and arrested them. The typewriters found in the car belonged to the school district and the pinch bar fitted precisely the indentations of the pried window.

The appellant filed a motion to suppress evidence in which he set forth the circumstances of his detention, the search of the car and the seizure of its contents and alleged that the search and seizure [140] were specifically prohibited by the State Highway Patrol Act (Mo. R. S. A., Sec. 8362) and violated the constitutional prohibition against unreasonable searches and seizures. Const. Mo., Art. I, Sec. 15. It is not necessary in the disposition of this appeal to detail the circumstances and demonstrate that the search and seizure were unlawful and violative of the appellant's constitutional rights. It is sufficient for the purposes of this opinion to say that the search and seizure were unlawful and that the trial court should have sustained the motion to suppress (State v. Owens, 302 Mo. 348, 259 S. W. 100; State v. Morice, (Mo.) 79 S. W. (2d) 741) but it does not follow in the circumstances of this record that the appellant is entitled to be discharged or have the cause remanded for that reason.

The personal right against unreasonable searches and seizures, secured by the constitution, like the right against self-incrimination and of confrontation may be waived or so used or employed that one may lose the right to insist upon their strict enforcement or to complain of their infringement. State v. Graves, 352 Mo. 1102, 1114, 182 S. W. (2d) 46, 54; Motes v. U. S., 178 U. S. 458, 20 S. Ct. 993, 44 L. Ed. 1150. Upon the trial of this cause the appellant so conducted himself and his defense that he is in no position to complain of the invasion of his constitutional rights. In voluntarily testifying (Mo. R. S. A., Sec. 4081) he denied that he had burglarized the school building or that he had stolen the typewriters. He denied that he had ever stopped in Preston. He admitted possession of the seven typewriters but testified that he purchased them from Crawford Bennett in El Dorado Springs on the 31st day of July 1945 for

$140.00. While he conceded that the typewriters were a bargain at twenty dollars each he did not suspicion that they had been stolen. He testified that he owned the pinch bar but explained that he had purchased it and used it to tear down a stand he had operated at the carnival in El Dorado Springs. In addition he offered in evidence another newly purchased pinch bar and attempted to demonstrate that it likewise fitted the indentations on the school window. He admitted the presence of the two license plates, one in and one on his car, but explained that he had but recently purchased the car and for that reason the 1945 license plate as well as the title to the car had not been transferred to him and the mutilated 1942 plate was left there by the previous owner. He testified that the spatula was a "putty knife" which he had used in his carnival concession. He claimed ownership of the screw drivers and the ball hammer but testified that he had not used any of these tools on the school building in Preston. The blank, soft-soled shoes belonged to him but, he explained, they were only unrationed shoes.

It should be emphasized that it is not the mere fact of his testifying that renders harmless the state's invasion of his constitutional rights and excuses the use of the illegally obtained evidence. If he had not voluntarily given evidence of his possession and ownership of the typewriters and other implements he would not have destroyed his right to now insist upon the protection of his constitutional guaranties. Agnello v. U. S., 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145. Had he denied any knowledge whatever of the questioned evidence he would not have rendered harmless the state's use of the illegally seized evidence by merely testifying in his own defense. Cofer v. U. S., 37 F. (2d) 677; Parkinson v. State, (Miss.) 110 So. 513. It is not the fact of his testifying at all that negatives his right to insist upon his constitutional rights but it is the fact and force of what he voluntarily testifies to and admits that prevents his continuing insistence upon their enforcement. In testifying in this case the appellant voluntarily admitted every fact the state sought to show by using the evidence, namely that he owned the articles or had them in his car. The only difference between the state and the appellant concerning the questioned evidence was the conflicting inferences they would have the jury draw. Having testified voluntarily to the questioned evidence and admitted his possession or ownership of the objectionable articles the appellant may not now complain that it was obtained by an unlawful search and seizure in the first instance. In State v. Park, 322 Mo. 69, 16 S. W. (2d) 30, the appellant was [141] charged with receiving stolen property—a set of harness. It was held, when he voluntarily testified and admitted possession of the harness but claimed that he did not know that it had been stolen, that he could no longer object that the state had illegally seized the harness. Mississippi has applied the rule in two larceny

cases. Blowe v. State, 130 Miss. 112, 93 So. 577; Rawls v. State, (Miss.) 120 So. 211.

In several liquor cases defendants have claimed that stills and liquor had been obtained by unlawful searches and seizures and then have voluntarily testified and admitted their possession but attempted to explain or excuse it and, with but one exception, the courts have held that the defendants could not thereafter complain of the state's initial use of the illegally obtained evidence. U. S. v. Wernecke, 138 F. (2d) 561; Edmondson v. U. S., 80 F. (2d) 517; McFarland v. U. S., 11 F. (2d) 140; Libera v. U. S., 299 Fed. 300; Temperani v. U. S., 299 Fed. 365; McDonald v. State, (Tex.) 77 S. W. (2d) 685; Goodman v. State, (Miss.) 130 So. 285; Prine v. State, (Miss.) 130 So. 687; State v. Watson, (Miss.) 98 So. 241, 242; Dyer v. State, (Okla.) 220 Pac. 69. The exception is Korska v. U. S., 51 F. (2d) 330 in which the Eighth Circuit Court of Appeals held that the defendant was compelled or "induced by the introduction of this illegal testimony" to give evidence and therefore had not waived his right to object to the unlawful search and seizure and the use of the evidence obtained thereby. Judge Stone dissented, pointing out that nevertheless the defendant had voluntarily testified. The rule has also been applied in a narcotics case where the defendant in testifying admitted possession of the narcotics but claimed to have purchased them from a dealer. White v. U. S., 16 F. (2d) 870.

██ Even a cursory review of the circumstances demonstrate that the jury reasonably found the appellant guilty of grand larceny in stealing the typewriters. State v. Denison, 352 Mo. 572, 178 S. W. (2d) 449; State v. Oliver, 355 Mo. 173, 195 S. W. (2d) 484. Indisputably the value of the typewriters exceeded thirty dollars, consequently there was no occasion for an instruction on either the subject of their worth or on petit larceny. State v. Hannon, (Mo.) 204 S. W. (2d) 915; State v. Wells, (Mo.) 234 S. W. 825. The defendant did not rely on an alibi (State v. Hamlin, 351 Mo. 157, 171 S. W. (2d) 716), he merely denied the offense and claimed that he had never stopped in Preston, hence the exact time was not an essential element of the offense in this case (State v. Taylor, 345 Mo. 325, 133 S. W. (2d) 366) and it was neither necessary to charge nor to prove the appellant's presence at a precise time. Mo. R. S. A., Sec. 3952, State v. Proffer, (Mo.) 159 S. W. (2d) 681; State v. English, (Mo.) 228 S. W. 746. There can be no doubt, in the circumstances, of the admissibility in evidence of the stolen property, the typewriters (State v. Stephens, (Mo.) 8 S. W. (2d) 3, 5) or of the pinch bar, the spatula, the screw drivers, hammer and such of the implements as would reasonably justify the inference that they were or had been used in the commission of the offense. 22 C. J. S., Secs. 709, 710, 712, pp. 1203-1207; annotation 143 A. L. R. 1199. State v. Pease, (Mo.) 133 S. W. (2d) 409 neatly illustrates the point. There the offense was

burglary and larceny and it was held that "The shells or cartridges found at the point of entry were properly received in evidence as a circumstance surrounding the commission of the alleged offense, and tending to connect accused therewith when taken in connection with the fact that like or similar shells were found on his person when arrested later the same night." Such of the articles as properly fall within this classification were appropriately received in evidence.

But the rule does not apply to the pistols or to other articles which clearly do not fall in this category. It appears from the hearing of the motion to suppress evidence that the two pistols found in Mrs. Smith's purse belonged to the appellant, but when he testified he did not mention the pistols. It was not claimed by the state that Smith had the pistols when he committed the burglary and larceny. There was no fact or circumstance from which it was a fair or even possible inference that he did. The state's theory was that the [142] school had been burglarized in stealth by the use of the burglary tools and that the typewriters had been secretly carried away. The two loaded pistols were taken from Mrs. Smith's purse at Harrisonville and it was not claimed that she was a party to the burlary and larceny. As we have said, it was not even claimed by the state that the pistols had any connection with the offense for which Smith was being tried. 22 C. J. S., Sec. 712, p. 1207. Nevertheless when the first patrolman testified the pistols were offered and received in evidence together with all the other exhibits. That the introduction in evidence, before this mixed jury, of these lethal weapons, under the circumstances, was erroneous and prejudicial is self-evident. State v. Richards, 334 Mo. 485, 494, 67 S. W. (2d) 58, 60; State v. Wynne, 353 Mo. 276, 287-289, 182 S. W. (2d) 294, 299-300.

The state contends however that the appellant is not in a position to now complain of the error because there was no request for a discharge of the jury or for further action on the part of the trial court when the pistols were finally excluded from the jury's consideration. The state seeks to apply to the circumstances of this case the rule followed in State v. Hepperman, 349 Mo. 681, 700, 162 S. W. (2d) 878, 888, that not only must there be prejudicial error in the admission of the objectionable evidence but the appellant must also have requested further action on the part of the trial court and have moved to discharge the jury, otherwise it may be assumed that he was satisfied with the court's orally instructing the jury to disregard the evidence.

The two lines of cases concerning this subject are reconcilable however when the facts and circumstances of each case are carefully analyzed and considered. When the objectionable evidence is obviously or spontaneously volunteered (State v. Nasello, 325 Mo. 442, 30 S. W. (2d) 132; State v. Walker, (Mo.) 46 S. W. (2d) 569) or the evidence is patently not prejudicial (State v. Merrell, (Mo.)

263 S. W. 118) and when the court promptly, upon first objection, sustains an objection to the proffered evidence and instructs the jury to disregard it the appellant is precluded from further objecting to the prejudicial effect of the evidence unless he also requests some other action on the part of the court and finally moves the court to discharge the jury. State v. Holmes, 316 Mo. 122, 289 S. W. 904; State v. Johnson, (Mo.) 292 S. W. 41; State v. Sinovich, 329 Mo. 909, 46 S. W. (2d) 877; State v. Hepperman, supra. State v. Grubbs, 316 Mo. 243, 289 S. W. 852, was a prosecution for burglary and larceny and in similar circumstances it was held that even evidence of other thefts was not subject to review when the court immediately and promptly sustained an objection and instructed the jury to disregard the evidence.

But the fact that the court finally sustains an objection to the admission of evidence and withdraws the evidence from the jury's consideration or orally instructs the jury to disregard the evidence does not necessarily cure the error and in such instances a defendant is not always precluded from thereafter complaining upon appeal even though he has not requested the court to discharge the jury, reprimand counsel or take some further affirmative action. 24 C. J. S., Sec. 1915, pp. 973, 978; State v. Barnard, 64 Mo. 260; State v. Kuehner, 93 Mo. 193, 6 S. W. 118; State v. Thomas, 99 Mo. 235, 12 S. W. 643; State v. Martin, 229 Mo. 620, 129 S. W. 881 (a leading case); State v. Benson, 346 Mo. 497, 142 S. W. (2d) 52. State v. Hale (1900), 156 Mo. 102, 56 S. W. 881, was a burglary case from Polk County and the appellant was represented by the special prosecutor in this case.

The facts and circumstances concerning the objectionable evidence in this case are these: The patrolman who picked up the purse and discovered the pistols first testified to the fact. When defense counsel objected that the pistols had not been in the appellant's possession the court said: "I believe the parties testified that they were in the car together" and overruled the objection. Defense counsel then objected to the pistols because they did not tend to prove the burglary and larceny of the typewriters. The court then inquired for what purpose the pistol evidence was being offered. The special prosecutor replied: "*For the purpose of showing that they had* [143] *the loaded pistols, and that ordinary citizens wouldn't be carrying loaded pistols.*" The court then overruled the objection. Counsel immediately objected that the introduction of the pistols tended to prove another crime for which the defendant was not on trial, that they had no connection with the burglary and larceny for which the defendant was being tried "and further, for the reason it is our contention that it would be for the purpose of prejudicing the jury." The court overruled each of these specific objections. Then the court sustained an objection to the question: "Is that the revolver that was

in Mrs. Smith's purse"? and the answer was "Yes, sir, we did." Defense counsel renewed their objections and the court said: "You may ask him what else he found, without exhibiting anything. Let him describe what he found." The witness then proceeded to describe the pistols in detail and how and where he found them. Upon further objection the court ruled: "Proceed." The witness then testified that Smith had been questioned concerning the pistols, admitted owning all three of them and said that he intended to sell them. When the second patrolman testified the court sustained an objection to his evidence concerning the pistols. Counsel then said: "And I further ask that this jury be discharged, on account of that prejudicial statement" that they found two loaded pistols in his wife's purse. The court instructed the jury to disregard the evidence. At the conclusion of the state's evidence in chief the prosecutor specifically offered in evidence each and every article testified to, the typewriters, the pinch bar, the screw drivers, the hammer, the license plates, the spatula, the bunch of keys, the shoes and in conclusion said: "I also offer in evidence the two revolvers, and the shells." The court sustained an objection to the introduction of the revolvers and upon being requested to instruct the jury against considering them said: "Ladies and gentlemen of the jury, these officers apprehended the defendant, along with Mrs. Smith, (she was not charged with her husband and did not testify in his defense) and made some investigation, and there was some testimony about two revolvers that were in her custody. You have no right to consider the testimony, about the two revolvers, as against this defendant, William Emmett Smith, the Court has held that, under the testimony, you have no right to consider that fact. The objection, *as to their submission to the jury,* will be sustained."

Nevertheless, in our view of the circumstances, the prejudicial force of these lethal weapons was not removed from the minds of the jurors and whether it was removed from their consideration of the appellant's guilt cannot be known. The initial introduction in evidence of the pistols was specifically approved by the court's first ruling. Subsequently the court sustained an objection to their introduction and instructed the jury to disregard them "But, in this case, a specific objection to the testimony was overruled, and it went to the jury with the sanction of the court. It was of a character to prejudice each of the defendants. And in the State v. Hopper, 71 Mo. 425, it was held that an instruction to disregard evidence improperly admitted would not cure the error of admitting it if it was of a character to prejudice defendant's case." State v. Fredericks & Reed, 85 Mo. 145, 150, a larceny case.

Because of the error noted the judgment is reversed and the cause remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.