**STATE of Missouri (Plaintiff), Respondent,**

v.

**Maxine Irene BRAY (Defendant), Appellant.**

No. 29039.

St. Louis Court of Appeals.

Missouri.

April 22, 1955.

Chaim H. Zimbalist, Chester A. Love, Jr., Clayton, for appellant.

William J. Geekie, Jasper R. Vettori, St. Louis, for respondent.

ROBERT L. ARONSON, Special Judge.

Defendant was charged by an information with the offense of petit larceny; was found guilty by a jury, which assessed her punishment at imprisonment in the City Workhouse for one year and a fine of $100; and now has brought her appeal to this court. Her assignments of error relate to the overruling of her motion to suppress evidence obtained by means of an allegedly unlawful search and to the claimed admission into evidence of improper exhibits and testimony.

It is always our duty to be certain of our jurisdiction of a cause. In her brief, defendant directs attention to Art. I, § 15 of the 1945 Constitution of Missouri, V.A. M.S., forbidding unreasonable searches and seizures. Sometimes appellate jurisdiction of a prosecution for a misdemeanor is vested in the Supreme Court because a consti-

tutional question is involved, Art. V, § 3, Constitution of Missouri 1945, V.A.M.S., and has been properly raised and preserved. See State v. McBride, 327 Mo. 184, 37 S.W.2d 423.

However, a party must present his constitutional issue at the first available opportunity, in order that the jurisdiction of the Supreme Court be invoked, Harris v. Pine Cleaners, Inc., Mo.App., 274 S.W.2d 328, 332; Baker v. Baker, Mo.App., 274 S.W.2d 322, 325, and must later keep it alive throughout the proceedings. Obviously, the first opportunity available to defendant to raise a constitutional point here was in her motion to suppress evidence. Examination of said motion discloses that while same has assertions that the searches and seizures were "made without warrant, * * * not made as incidents to any lawful arrests, * * * made without the consent of the defendant," and that the officers had no reasonable grounds at the time to believe defendant was guilty of a felony, yet there is not one word of reference to the State or Federal Constitutions. In this situation we have jurisdiction under the above cases and others cited therein. The general provisions of Section 479.250 RSMo 1949, V.A.M.S., covering appeals from the St. Louis Court of Criminal Correction are applicable.

The information charged defendant with the theft of "one dress" of the value of $23 on November 28, 1953, which was the property of Thomas W. Garland, Inc., a corporation. Later an amendment was made, showing the value as $23.75.

At the hearing on the motion to suppress, the grounds of which have been quoted above, Officer Joseph C. Kelly of the Clayton Police Department, who arrested defendant on November 30, 1953, testified that a call had been received from the Famous-Barr store which caused him and his partner, Officer McHale, to go to the Clayton shopping area to look for a certain Cadillac automobile and two women who were described; no claim of theft was made in that call; that at the Scruggs store they were informed that two women of the same description had just left the store, and had taken, without payment therefor, four sweaters of the value of "around seven dollars a piece"; that as he drove east on Forsyth Avenue alone, he observed the Cadillac on a parking lot; that two colored women soon got into it and defendant drove it east; that he caused the car to be stopped, and as he got out of the police car to talk to the women their automobile was suddenly started up again by defendant who was driving and a green shopping bag was tossed out of its right front window; that he re-entered the police car, pursued the Cadillac and stopped it again, this time in University City. Police of that City joined him, the women were taken to the University City Police Station and then released to the Clayton department. He returned to the automobile and drove it to the Clayton station at 10 o'clock P.M. The front and rear seats were searched, nothing important being found but the trunk was locked and defendant said she had lost her key.

Officer McHale testified that shortly after midnight he made a second search of the automobile which defendant had been driving; that the trunk key was found in a space between the two movable front seats; that defendant's husband was then present and gave permission to open the trunk; that the red dress involved in the instant charge and other articles were found there. The officer conceded that he had no search warrant. He identified a certificate of title showing that the Cadillac convertible was owned by Maxine Bray, the defendant.

The court overruled the motion to suppress, and defendant complains of this ruling. Her argument includes the contentions that her arrest was unlawful because the police officers had no grounds to believe that a felony had been committed (since the value of the four sweaters reportedly taken at the Scruggs store was about $7 each, or a total of $28, wherefore any wrongful taking would be no more than

petit larceny, a misdemeanor) and because arrest cannot be made without warrant for a misdemeanor, unless the misdemeanor was committed in the presence of the arresting officer; and that since the arrest was unlawful there could be no valid search of defendant's automobile without a search warrant. Counsel for the State make various responses to these contentions, including the assertion that the offense was being committed in the presence of the officer if flight was in his presence, but we consider it unnecessary to rule upon these issues.

■ It appears that these questions are of only academic interest, under the controlling decision of our Supreme Court. By her own later conduct in giving testimony, defendant has lost the right to complain of any infringement of her constitutional rights as to search and seizure. In other words, if we assume (without deciding) that defendant's constitutional rights were violated, yet we could not hold the ruling on the motion to suppress to be prejudicial, in view of defendant's own testimony; and hence it would be futile and without benefit to decide whether the search of the automobile and the seizure of personal property found therein were illegal.

The authoritative case is State v. Smith, 357 Mo. 467, 209 S.W.2d 138, decided by Division 2 of the Supreme Court of this state in 1948, never since repudiated or criticized, and binding on us as the law on the point now under consideration. Therein, it was specifically held that since a search and seizure were beyond the authority of the State Highway Patrol under the then existing statute, same were unlawful, and a motion to suppress should have been sustained, yet the defendant had lost the right to insist upon the strict enforcement of his constitutional rights or to complain of their infringement. Said defendant (also charged with larceny) had testified voluntarily, had denied the theft, had admitted possession of the seven typewriters charged to have been stolen, but had claimed that he purchased same from a named man in a named city on a given day; and had given further explanation on details of the State's case. In its opinion, the court said that it was not the mere fact of his testifying that rendered harmless the violation of his constitutional right and that excused the use of evidence illegally obtained, but the force of what he voluntarily testified and admitted, which prevented his continuing to insist upon the enforcement of his rights. We quote (209 S.W.2d loc. cit. 140):

"* * * If he had not voluntarily given evidence of his possession and ownership of the typewriters and other implements he would not have destroyed his right to now insist upon the protection of his constitutional guaranties. Agnello v. U. S., 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409. * * * In testifying in this case the appellant voluntarily admitted every fact the state sought to show by using the evidence, namely that he owned the articles or had them in his car. The only difference between the state and the appellant concerning the questioned evidence was the conflicting inferences they would have the jury draw. Having testified voluntarily to the questioned evidence and admitted his possession or ownership of the objectionable articles the appellant may not now complain that it was obtained by an unlawful search and seizure in the first instance. * * *"

See also State v. Park, 322 Mo. 69, 16 S.W.2d 30.

There is a parallel, and almost an identical, situation in the instant case. At the trial defendant here admitted possession of the red dress, but claimed to have purchased it from a man in East St. Louis, Illinois, as is more fully developed below, in our discussion of the evidence at the trial. Her voluntary admission of possession of the dress at the time of her arrest, bearing the tag which it had, renders harmless the use of evidence by the State that

she had the dress then, even if illegally obtained, according to the Smith decision. Therefore, we need not pursue the subject of the intricacies of the arguments concerning the ruling on the motion to suppress.

The sufficiency of the evidence to support the verdict and judgment of conviction, being called into question by defendant, and because of complaint of error in the admission of evidence, we must review the evidence at the trial. Mr. Andrews, President of Thomas W. Garland, Inc., testified that said concern has four stores and sells women's clothing. He described its unit control system, whereby their office has a record of every piece of merchandise in all four stores; the record is first made when goods are received; it shows to which store each garment was sent; and when an item is sold a portion of the tag on the garment is removed and sent to the office, whereupon a line is drawn through the record of that garment. The red dress offered in evidence here bore the tag of his company. The sheet of the unit control system showed that other dresses of the same lot were sold, but this red dress size 16 had not been sold and should still be in stock at the downtown store.

Miss Dail, a dress buyer for Garland's, knew defendant as a customer who was in the store about once a week; she saw her in the store on Saturday, November 28th; she gave defendant a black dress to try on, but it was the wrong size, and then she gave defendant a red dress to take to the fitting room; that was the last she saw of defendant. She next saw the dress when the police officers brought it to her; it still had the full tag, whereas when a dress is sold, the tag is torn and attached to the sales check and sent to "unit control." On checking her stock, she found the red dress was not there, although not marked off in the unit control room. She heard defendant tell Mr. Andrews at Central Police Station she had bought the dress from a man who owned a tavern in East St. Louis.

Miss Thorpe gave further testimony as to the unit control sheet, which she had in her charge.

Officer Kelly gave evidence similar to what he said at the hearing on the motion to suppress evidence, but omitting reference to an alleged theft of sweaters at the Scruggs store. He used the siren on the police car both times he stopped defendant. The two stops were approximately one block apart. The other woman was defendant's sister. After Officer McHale brought the red dress into the station, defendant said she had bought it four months before from a colored man in a tavern in the 3100 block of Easton Avenue, called Neal's. Then the following transpired:

"Q. Now, when McHale had this garment, did he have other garments too? A. Yes, sir, he did.

"Q. Did you see them? A. Yes, sir.

"Q. Examine them? A. Yes, sir.

"Q. How many different pieces of

"Mr. Love: Well, Your Honor, I am going to object—

"Q. —did you see there?

"Mr. Love: I am going to object to this line of questioning for the reason there is no relevancy or materiality to any garments other than this particular garment in question.

"The Court: Overruled.

"Q. The Court rules you may answer, Mr. Kelly. A. There was approximately seven or eight other articles of clothing.

"Q. Can you tell this Jury what they were? A. If I can refer to my report?

"Q. Yes. A. You just want the description of the clothing?

"Q. I would like to know what sort or articles they were. A. Value?

"Q. No. A. One pair of men's brown pants. One child's blue virgin

wool coat with leggings and hat or cap. And one black three-piece velvet coat, leggings and hat. One pink wool dress. One red wool dress. One black knit tie and one brown figured tie.

"Q. Now, did you examine that merchandise? A. Yes, sir, I did.

"Q. Did it have sales tickets on them? A. It did.

"Q. Did the—were the sales tickets in their entirety, or were there—or not? A. They were in their entirety, yes, sir.

"Q. Were there sales tickets on those garments similar to this one, having perforation lines here? A. Yes, sir.

"Mr. Love: I will object to the form of the question, Your Honor. He was asking this witness, were they similar to this. I have no objection to this witness describing them, but to ask him to draw the conclusion I submit is objectionable.

"The Court: Overruled.

"Q. Was the entire ticket on these garments? A. Yes, sir, it was."

After a noon recess, out of the hearing of the jury, the following record was made:

"Mr. Love: Yes. I wish the record to show that I object to the display on counsel table of four packages in brown wrapping paper, for the reason that their sole purpose can be only to suggest that they contain other merchandise which was seized by the Clayton police officers at the time the dress involved in this case was seized, and that such evidence and such suggestion can only tend to incite the minds of this Jury against this defendant and prejudice the rights of this defendant in this cause.

"The Court: Does the State, Mr. Vettori, intend to use these packages?

"Mr. Vettori: It does intend to use those packages.

"The Court: As evidence?

"Mr. Vettori: It does, Your Honor.

"The Court: Your motion will be overruled."

Officer McHale testified to his search of the automobile and its trunk, in which he found "numerous articles of clothing and store bags." After identifying the red dress, he was asked to describe "some of the other articles that were in the back of that trunk." Objection was made that testimony as to any other articles would not tend to prove the facts in this case, which objection was overruled. The answer was, "I found a pair of tan trousers, blue play suit, pink dress; I believe there was a black dress." This was tagged and held for evidence by the officer. Further, we quote from the transcript:

"Q. (By Mr. Vettori, Assistant Prosecuting Attorney)—I don't know just how to describe this as to material. It looks like it might be leather. Was that one of the articles that you found in the trunk of this Cadillac?

"Mr. Vettori shows the witness a jacket.

"A. No, sir, this was in the front seat.

"Q. In the front seat. Will you look at that ensemble and tell me if that was one of the articles?

"Mr. Vettori showed the witness a child's black velvet coat and legging ensemble.

"A. Yes, sir.

"Q. That was in the trunk? A. Yes, sir.

"The Court: Was the price tag on it? A. Yes, sir.

"Q. As it is now? A. Yes, sir.

"Q. A pair of brown trousers here, and a tie, were they likewise found in this same place? A. Yes, sir.

"Mr. Vettori showed the witness a pair of brown trousers and a tie.

"Q. Here is another child's ensemble. Was that in the trunk of this car?

"Mr. Vettori showed the witness a child's blue coat and legging ensemble. "A. Yes, sir.

"Q. This price tag on here as it is now? A. Yes, sir.

"Q. With the perforated part? A. Yes, sir.

"Q. What did you do with these three garments, the two child's ensembles, the tan trousers and the tie; to whom did you give that property? A. To detective sergeant Carr."

Sergeant Carr of the St. Louis Police Department testified that he went to Clayton and brought back to St. Louis the red dress in question, also a black "child's outfit" and a blue child's ensemble, brown trousers and a tie, each of which was in turn displayed to him. Defendant told Sergeant Hale at St. Louis Headquarters that she bought the red dress at Paramount Tavern, 15th and Pippin Streets, East St. Louis, Illinois, about 11 P.M. on November 28th.

After the red dress and the unit control sheet were introduced into evidence and examined by the jury, the record proceeds thus:

"Mr. Vettori: Your Honor, I also ask leave of Court at this time to introduce in evidence the other garments, consisting of the two children's ensembles, the trousers and the ties as one exhibit.

"Mr. Love: In the first place, they have not been marked for identification, if Your Honor please, and in the second place, I will object to the introduction of those items into evidence

for the reason that they do not tend to prove or disprove any of the issues in this case.

"The Court: The objection will be overruled. They will be received in evidence.

"Mr. Vettori: And may I have leave to start passing those around to the Jury in the opposite direction, Your Honor?

"The Court: No, I don't think those ought to be shown to the Jury.

"Mr. Vettori: The State rests, Your Honor."

Defendant testified that she was thirty years of age, the mother of two children, and employed at the United States Defense Corporation. Her husband works for the Post Office. She had once been convicted of petit larceny on a plea of guilty in 1951. She said she had not been in Garland's on Saturday, November 28th, but had been there on Friday, the day previous; she looked at dresses, but did not see the red dress here in evidence; she first saw it on Saturday evening, November 28th, in the Paramount Tavern in East St. Louis and purchased it there from one Walter, a colored man from whom she had purchased other things; she had seen him at other places, including at her home and at Neal's Tavern on Easton Avenue.

Defendant was cross-examined vigorously concerning her prior conviction and her use of the name Bryant at that time (which she said was her maiden name) and her giving incorrect information to the Court's parole officer as to her age, her husband's name and occupation, and her having but one child. In rebuttal, the parole officer gave testimony on this subject.

■ We have no hesitancy in ruling that the foregoing evidence was sufficient to require the submission of the case to the jury, and to support the verdict of conviction; and we reject defendant's contention that the evidence only gives rise to sus-

picion, as distinguished from proof, of guilt.

The very serious questions in this case, however, arise from the frequent references of the zealous Assistant Prosecuting Attorney to articles of personal property other than the red dress involved in the charge contained in the information, and the Court's rulings upon the objections thereto. In her motion for new trial, defendant alleged error in the admission into evidence, over objection, of the brown trousers, the brown tie, and the two children's ensembles; and in receiving in evidence, over objection, the testimony of Officer Kelly that there were found in defendant's car other garments besides the red dress (State's Exhibit 1), namely, the articles offered in evidence (as already stated in this sentence) and one pink dress and one black tie. These points are again presented in assignments of error for our consideration.

The garments which were contained in the "four packages in brown wrapping paper" were not marked as an exhibit, but were introduced in evidence as one exhibit. They have been forwarded to this court with other numbered exhibits. They consist of a pair of brown trousers, a tie, and two children's ensembles, one blue and one black.

The record is silent as to what was done with the other seized articles, the black knit tie and the pink dress. These were not shown to the jury. Our further references to "other garments" should be understood as not including these, but only encompassing the four mentioned in the last preceding paragraph.

It seems apparent that these other garments were not at any time the property of Thomas W. Garland, Inc., victim of the theft of the red dress. It deals only in women's clothing; these items were for children or men.

There was no proof whatever that these garments were stolen. The State seeks to infer that they were stolen, merely because the children's ensembles and the trousers had full sales tickets attached. (the tie has no ticket.) It is not possible to infer theft merely from the presence of the tickets on the garments. It cannot be deduced, solely from the fact that Thomas W. Garland, Inc., had a unit control system and followed a certain system of removing part of a ticket when goods were sold, that all other firms used the same methods. There was no evidence that all retail stores pursued identical systems, and an assumption to that effect cannot be indulged.

Yet these other garments were described and displayed to the jury for the obvious purpose of suggesting that same had been stolen, in order to make more certain the inference that the red dress had been stolen. This was an effort to build an inference upon an inference, with the first inference coming only from the proof as to the methods employed by Garland, owner of the red dress.

No questions were asked of any witnesses as to how or when these other garments came to be in the trunk of defendant's automobile; nor was any person called who claimed their ownership.

■■ The general statement in 32 Am. Jur., Larceny, Sec. 134, p. 1045, seems here to be applicable:

"Where evidence of possession by the defendant of property other than that involved in the larceny with which he is charged has no proper tendency to connect him with the crime charged, its only effect being to discredit the defendant by showing or tending to show that he had been guilty of other crimes, such evidence should not be admitted. Moreover, although there is authority for the view that evidence of the possession of other property may be admitted where the circumstances are such that such evidence tends to prove the crime with which the defendant is charged, it is generally held that such evidence is not admissible in the absence of proof not only that such prop-

erty was found in the possession of the accused, *but also that it was stolen property* and, further, that there was some connection between it and the property charged in the indictment to have been stolen, as where it is shown that it was stolen at or about the same time and place." (Emphasis ours.)

■■ Since these garments were not proved to have been stolen property, they were not relevant or material evidence in this case and we rule, therefore, that error was committed in receiving "the other garments" in evidence as an exhibit and in receiving the testimony concerning them with its emphasis on the sales tickets. That such error was prejudicial to defendant and interfered with the complete fairness of her trial, woud seem quite obvious. The punishment assessed by the jury was the maximum provided by law for the offense. If the inclusion within the evidence of the inadmissible evidence added any time to the term of imprisonment or any dollars to the amount of the fine, defendant was prejudiced.

The psychological impact upon the minds of jurors by the several references permitted in this case to merchandise other than the dress mentioned in the information may well be apprehended. State v. Wynne, 353 Mo. 276, 182 S.W.2d 294 (especially the quotations from Mr. Wigmore on p. 300); also, State v. Smith, supra.

We do not rule upon the question of whether "the other garments" would be admissible in evidence, if the proof had shown that they were stolen, because that determination is not necessary to the decision of this case.

Because of error in the admission of evidence, as pointed out above, the judgment is reversed and the cause remanded for retrial.

ANDERSON, P. J., and SAM. C. BLAIR, Special Judge, concur.