**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Alfreddie NEVELS, Defendant-Appellant.**

**No. KCD 27673.**

Missouri Court of Appeals,
Kansas City District.

June 1, 1976.

William G. Mays, II, Public Defender, 13th Judicial Circuit, Columbia, for defendant-appellant.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This appeal stems from a trial by jury which found defendant guilty of forcible rape (Section 559.260, RSMo 1969) and imposed a ten year sentence.

Defendant's assignments of error on appeal are two in number: (1) Insufficiency of the state's evidence to prove penetration; and (2) Inadmissibility of "foreign hair" removed from his pubic area.

A synopsis of the evidence is in order. According to the state's evidence the prosecutrix (a student at the University of Missouri, Columbia) was alone in her apartment between 7:30 and 8:00 P.M. on March 21, 1974, when she heard someone open the front screen door. Believing the person at the door to be her roommate's boyfriend, the prosecutrix went to the front door, unlocked and opened it. In doing so, she encountered a black male who was a total stranger to her, and she positively identified him during the trial as the defendant. While peering into the apartment, defendant asked the prosecutrix if anyone else was present. Thereupon, the prosecutrix attempted to close the door. Defendant, however, managed to reach inside the door and grab the prosecutrix by the arm. After doing so he forced his way into the apartment and then closed and locked the front door.

After gaining admittance defendant told the prosecutrix, "Don't scream or don't yell or you will make me hurt you." The prosecutrix was crying and pleading with defendant not to hurt her. Defendant responded to the prosecutrix's tears and pleas by telling her "that he had friends outside who were watching over the place and watching out for him and that if [she] screamed or made any noise that he would hit [her]." Defendant then ordered the prosecutrix into the bedroom of the apartment. Still in tears, she refused to comply with defendant's order. Defendant then reached towards his pocket two or three times and "drew his hand back" and admonished the prosecutrix, "Be quiet or I'll hurt you. You will make me hurt you. Be quiet." Defendant then grabbed the prosecutrix by the arm and pushed her towards the bedroom, and, while doing so, told her, "Go back there. Be quiet or I'll hurt you."

In the bedroom defendant compelled the prosecutrix to partially disrobe herself, then he "pulled [her] underwear off." Defendant then pushed the prosecutrix onto the bed, in a prone position, dropped his pants and undershorts, "pulled [the prosecutrix's] legs apart", and forced her to have sexual intercourse with him.

Before leaving the apartment, defendant, on three separate occasions, warned the prosecutrix not to tell anyone what happened or he "would come back and get [her]." As soon as the prosecutrix was sure that defendant had left the apartment she locked the front door and then returned to the bedroom and "wiped [herself] off with a Kleenex." She then called her boyfriend and told him that she had been raped. Her boyfriend arrived at the apartment in about ten minutes. Immediately after his arrival, the prosecutrix telephoned the Columbia Police Department and reported the incident. The police responded to the call and took the prosecutrix to the University of Missouri Medical Center where she was examined at approximately 9:30 P.M. by Dr. Henry Frederick Williams, Chief Resident of Obstetrics and Gynecology.

According to Dr. Williams, a microscopic examination of the fluid content of prosecutrix's vagina revealed "eight to ten sperm per high-power field" which were "non-motile". He did not deem it "unusual" that the sperm were non-motile. In his opinion, the sperm revealed by his microscopic examination resulted from "sexual contact". Defendant's cross-examination of Dr. Williams ferreted out that approximately 400 million sperm are normally emitted per ejaculation.

Dr. John Steven Morris, Senior Research Chemist at the University of Missouri Environmental Trace Substances Research Center, testified that a "neutron activation analysis" which he performed revealed that a "foreign hair" identified as having been removed from defendant's pubic area (facts surrounding its removal will be discussed in greater detail when defendant's second assignment of error is specifically addressed) was of "common origin" with hair specimens identified as having been removed from the pubic area of the prosecutrix.

Mark Pellham, a forensic chemist employed by the Missouri Highway Patrol in its "crime laboratory", testified that an "acid phosphatase and an anti-human se-

men sera" test which he performed on the victim's "underwear" and the Kleenex which she had cleaned herself with revealed the presence of "seminal stains" on both items.

Defendant, after a full explanation by court and counsel of the panoply of rights afforded him as an accused, and the state's right of cross-examination, voluntarily chose to take the witness stand in his own behalf. According to defendant's testimony, his presence in the prosecutrix's apartment on the night in question, without explanation, was by "invitation"; the prosecutrix began to act "sort of sexy"; she then enticed him into the bedroom where she proceeded to completely disrobe; after disrobing she "laid on the bed" and suggested to defendant that he disrobe; he acquiesced to the extent of disrobing from the waist down, and, after doing so, "got on the bed" and "laid on top" of the prosecutrix; he occupied this position for "five or six minutes"; he denied having sexual intercourse with the prosecutrix or ejaculating while occupying the position heretofore described; he then dressed and left the prosecutrix's apartment.

Defendant does not attack the quantity or quality of the state's evidence to support the guilty verdict returned by the jury except as to one narrow aspect—penetration, one of the essential elements of the crime of forcible rape. His argument in this respect is tiered: (1) "It is almost impossible to believe that there could have been penetration prior to ejaculation when only eight to ten non-motile sperm are found in the vagina."; (2) "[I]t would seem certain that some of the sperm would be motile."; and (3) "The weight of the evidence in this case is that there was no penetration." It is patently obvious that the true thrust of defendant's argument in support of his first assignment of error faults the weight of the evidence respecting penetration. Defendant's first assignment of error and the argument tendered to support it are inconsistent. The assignment of error questions the sufficiency of the evidence and the argument proffered in its support questions the weight of the evidence.

The weight to be given the evidence pertaining to penetration was within the province of the jury and is not reviewable on appeal. *State v. Wright,* 476 S.W.2d 581 (Mo.1972); and *State v. Tschirner,* 504 S.W.2d 302 (Mo.App.1973). It is the sufficiency of the evidence to support a verdict of guilty which is reviewable on appeal, not the weight of the evidence. In testing the sufficiency of the evidence, appellate courts must consider the facts in evidence and all favorable inferences reasonably to be drawn therefrom in the light most favorable to the state, and reject all contrary facts and inferences. *State v. Gantt,* 504 S.W.2d 295 (Mo.App.1973); *State v. Whaley,* 512 S.W.2d 431 (Mo.App.1974); and *State v. Morris,* 518 S.W.2d 79 (Mo.App. 1974). Notwithstanding the irreconcilability between defendant's first assignment of error and the argument tendered to support it, this court must and will look at the evidence appertaining to penetration, in the light heretofore mentioned, and judicially determine whether substantial evidence existed from which the jury could find beyond a reasonable doubt that penetration occurred.

Defendant possesses a somewhat obdurate attitude regarding the evidence. Such is indicated by the fact that he completely ignores certain salient facts. For instance, defendant ignores the testimony of the examining physician that he did not deem it "unusual" that the sperm which he found were non-motile. Defendant also ignores the testimony of the prosecutrix that she "wiped [herself] off with a Kleenex" almost immediately after being raped and prior to being examined by said physician. Additionally, defendant ignores the testimony of the forensic chemist that "seminal stains" were found on prosecutrix's "underwear" and on the Kleenex which she "wiped [herself] off with." The most telling evidence disregarded by defendant came from the lips of the prosecutrix:

"Q. . . . When you say he raped you, what exactly do you mean?

A. He made me have intercourse with him.

\* \* \* \* \* \*

Q. Then what happened after he pulled your legs apart . . .?

A. He got on top of me.

Q. Then what happened?

A. He made me have intercourse with him.

Q. Could you tell me what you mean by that?

A. Yes. He forced his penis into my vagina.

\* \* \* \* \* \*

Q. Is it your testimony at this time . . . that during the course of the incident that happened at your home, that you were penetrated and ejaculation occurred inside you?

A. Yes, sir."

■ Defendant appears to possess an equally obdurate attitude regarding the prevailing law. In Missouri, essential elements of rape are penetration, however slight, of a female's sexual organs, accomplished by force or threats against her will. *State v. Robinson,* 484 S.W.2d 186 (Mo. 1972); *State v. Deckard,* 426 S.W.2d 88 (Mo.1968); and *State v. Ruhr,* 533 S.W.2d 656 (Mo.App.1976). Even a complete absence of sperm in the prosecutrix's vagina after the emotionally charged incident which, according to her testimony, she was subjected to, would not be conclusive proof of lack of penetration. *State v. Ruhr,* supra (Mo.App.1976). See also *People v. Wright,* 3 Ill.App.3d 829, 279 N.E.2d 398 (1972). This for the reason that ejaculation is not an element of the crime of rape, but merely a circumstance tending to prove the element of penetration. The testimony of the prosecutrix was not contradictory, nor so lacking in convincibility as to cloud this court's mind with doubt, regarding penetration and, as well, the other requisite elements of forcible rape. Consequently, defendant's first assignment of error, viewed by this court as an attack on the sufficiency rather than the weight of the evidence, must fail.

Defendant's final assignment of error—the admission into evidence of "foreign hair" removed from his pubic area—requires the delineation of certain additional facts in order to put it in proper perspective for disposition. Although a careful search of the transcript on appeal fails to disclose defendant's age, it is implicit throughout that the trial court, the state and defense counsel recognized that defendant was a juvenile when the offense with which he stood charged was perpetrated. Bearing this in mind, the transcript reveals that defendant was taken into custody by the Columbia police on the night of March 21, 1974, following the prosecutrix's report of the incident, and brought to police headquarters. After his arrival at police headquarters the Boone County juvenile officer was called and defendant was apparently delivered to the juvenile officer, although the record is far from clear in this respect. In any event, while defendant and the juvenile officer were still present at police headquarters, the police asked both defendant and the juvenile officer if they would consent to defendant's submission to the removal of some hair from his pubic area. Both the juvenile officer and the defendant readily gave their separate consents thereto and no threats or force were involved. The controversial "foreign hair" heretofore alluded to was obtained at the time.

■ Defendant, with notable brevity of argument and authority, contends that removal of the "foreign hair" from his pubic area violated Sections 211.061 and 211.151(2), RSMo 1969, and therefore said "foreign hair" should not have been admitted into evidence. It is unnecessary to construe the statutory sections of the juvenile code, supra, relied on by defendant, or to predicate disposition of his final assignment of error thereon, for the following reason. The "foreign hair" removed from defendant's pubic area, in conjunction with known hair specimens removed from the prosecutrix's pubic area, merely tended to prove that the bodies of the prosecutrix and the defendant were in close physical contact while in a state of bilateral nudity. De-

fendant, as heretofore noted, voluntarily testified that his body and that of the prosecutrix were in close physical contact while in a state of bilateral nudity. Whether or not removal of the "foreign hair" from defendant's public area was proscribed by Sections 211.061 and 211.151(2), supra, is purely academic because defendant's own positive testimony rendered admission of the complained of evidence harmless. Authoritative support for this conclusion is found in *State v. Smith,* 357 Mo. 467, 209 S.W.2d 138 (1948) *rev'd on other grounds,* and *State v. Bray,* 278 S.W.2d 49 (Mo.App. 1955) *rev'd on other grounds.*

Judgment affirmed.

All concur.