**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Lonnie LEIGH, Jr., Defendant-Appellant.**

No. 38531.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 27, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 13, 1979.

Robert C. Babione, Public Defender, Frank R. Fabbri, III, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Paul Robert Otto, John M. Morris, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Joseph W. Warzycki, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Appellant, Lonnie Leigh, Jr., was convicted in a jury waived trial of the offense of statutory rape, § 559.260 RSMo. 1969, and was sentenced to a term of thirty years in the custody of the Missouri Department of Corrections. He contends, on appeal, that his conviction should be reversed and remanded to the trial court with directions for entry in that court of a judgment that he is not guilty of statutory rape, or that he be afforded a new trial by reason of preju-

dicial error committed by the trial court depriving him of a fair trial. We have considered these allegations, find no merit to them, and affirm the judgment of conviction in the trial court.

Appellant's first contention is that the trial court erred and abused its discretion in overruling his motion to dismiss and in finding him guilty of the crime charged, i. e. statutory rape, because there was no substantial evidence to support this finding.

As we perceive appellant's argument on this point, the state failed to prove that the "defendant penetrated the prosecutrix (sic) sexual organ with his own sexual organ." In support of this argument he cites the testimony of the prosecutrix on this issue, and concludes that answers to questions propounded to her by defense counsel indicate that she had been coached to use certain words, i. e. "penis" and "vagina," in a manner so as to make a submissible case against him. He also argues that the trial judge interjected himself into the case improperly when he interrogated the prosecutrix during cross-examination and led her to describe the male sexual organ as she observed it immediately prior to the alleged penetration. Other questions put to the prosecutrix by the trial judge are also cited as improper participation in the trial and as evidence of an effort on the part of the trial judge to aid the state in making a submissible case. These are too numerous to quote in this opinion without unduly lengthening it.

In view of the provision in Rule 26.01 that in a jury waived case the findings of the trial court shall have the force and effect of the verdict of a jury, an appellate court reviews the evidence on appeal from conviction in a jury waived case in the same manner as though the verdict had been returned by a jury, and where substantial evidence supports the finding of the trial court its judgment will be affirmed. *State v. Sanderson,* 528 S.W.2d 527, 529[1] (Mo. App.1975).

During the state's case in chief the prosecutrix testified that sometime between 9:30 and 10:30 a. m. on a day she was

out of school and while en route from a store, where she had purchased some soda pop, which was in the neighborhood of her sister's house on Waterman Avenue in the City of St. Louis, she met one Darlene Thomas at a Shell service station on Waterman Avenue across the street from the confectionary. At that time she observed the appellant repairing an auto. Ms. Thomas asked the prosecutrix whether she would like to earn some money by cleaning the restrooms in the service station, but the prosecutrix was not sure she was interested. Ms. Thomas pulled her into a small storage room inside the service station and asked her if "a girl ever got me." The prosecutrix replied in the negative and Ms. Thomas then asked whether the prosecutrix wanted her to show how two girls "do it." Again the prosecutrix said no. Ms. Thomas then unbuttoned the prosecutrix's clothes, removed a pant leg and prosecutrix's panties and pushed her down onto a blanket. Ms. Thomas then removed her own clothing, laid on top of the prosecuting witness and moved and rolled around on her touching the area of their "private parts" together. While this was taking place the prosecuting witness was crying.

The appellant, who had appeared at the door to the storage room as Ms. Thomas was disrobing the prosecuting witness, came into the storage room and said to her, "If you don't give me none I'm going to tell your brother." He then put his fingers to his mouth and "put it down in my vagina." He then "pulled his thing out"—his penis— "And stuck it in me." She testified that she felt "it" go into her and that it was in her a short time while he was "rolling" on top of her.

On cross-examination the prosecuting witness testified that she saw the appellant unzip his pants, saw him "hold onto something of his down by his waist" which he got out of his pants and looked like a "weiny," a "Polish sausage," that was "round and have something rounder sticking onto it," "something round and holding onto his body, attached to his body." Later she further testified on cross-examination that appellant was on his knees when he

moistened his finger with his mouth, leaning over her. She was sure that it was not just his finger that the appellant put into her, and "he put it in my vagina." She knew her "vagina" as her "privates" and when she went to the bathroom and sat on a stool "pee" would come out of it. She felt something warm, like warm water, on her body when appellant got off her, and she felt this warmth inside herself.

We hold that there was substantial evidence to support the finding of the trial court that "R— J— was taken into a storage room of Lonnie's Shell station located at 324 DeBalivere on January 15, 1975, where the defendant inserted his sexual organ into her sexual organ, . . . ." The essential element of rape insofar as penetration is concerned in Missouri is penetration of a female's sexual organ by that of a male, *State v. Martin,* 544 S.W.2d 84, 85[1] (Mo.App.1976); however, the penetration need be but slight. *State v. Coffman,* 360 Mo. 782, 230 S.W.2d 761[3] (1950).

Appellant further argues that the testimony of the prosecutrix was so contradictory that for this conviction to stand up there must be corroborative evidence of rape, and there is none. It is not clear from appellant's brief whether this contention is limited to the issue of penetration, or whether it is also directed to the credibility of the prosecutrix. In the argument portion of the appellant's brief on this point citation to testimony of the prosecutrix with reference to the male sexual organ is cited for the purpose of showing her lack of knowledge of the terms "vagina" and "penis." He refers to portions of the transcript where the prosecutrix testified that the assistant circuit attorney identified the sexual organs of the male and female in these terms. He also refers to portions of the transcript where he contends the trial judge interjected himself and asked leading questions of the prosecutrix in an effort to identify the "thing" she testified the appellant took out of his unzipped pants and inserted into her privates. He also contends that the failure of the state to introduce into evidence any medical record to show penetration had oc-

curred despite the fact the prosecutrix was seen at St. Luke's Hospital the same day the rape allegedly took place, inferentially refutes penetration. Appellant argues also that the evidence proved that the prosecutrix returned to the service station on two subsequent occasions the same afternoon of the alleged rape and that she failed to inform her sister of the occurrence; these facts, he contends, cast doubt on the credibility of the prosecutrix. For these reasons appellant says corroboration is necessary for the conviction to stand.

■ A prima facie case of rape can be made on the uncorroborated testimony of the victim. *State v. Palmer,* 306 S.W.2d 441, 443[1] (Mo.1957). Corroboration to show sexual intercourse becomes essential only when the victim's testimony is so contradictory and in conflict with physical facts as to be unconvincing and improbable. *State v. Lee,* 404 S.W.2d 740, 747[12] (Mo. 1966). We hold that although there were some apparent contradictions in the testimony of the prosecutrix in the record of this trial, there was no room for doubt that her testimony established penetration of her privates by the appellant's "thing," and that the trier of fact could find from her testimony that the "thing" she referred to was the appellant's sexual organ.

The prosecutrix in this case was ten years of age at the time of this occurrence, and twelve years of age at the time of her testimony. Her inexperience in sexual matters is not unexpected, and her knowledge of anatomical definitions with respect to the male and female sexual organs no basis for discounting her testimony. There is no magic word necessary to describe penetration; nor is it necessary to identify the sexual organs by the words "penis" or "vagina." Other descriptive words will suffice. "Privates" is a fit description for a little girl's vagina and one frequently used to describe the sexual organ of a female child. In *State v. Lee,* 404 S.W.2d 740, 743 (Mo. 1966) the prosecutrix, a child barely 15 years old at the time of the offense, described the act of intercourse in the following terms: "put his privates in mine." In *State*

*v. Palmer,* supra, the prosecutrix testified "He 'unzipped' his pants, 'took his privacy out' and got on top of prosecutrix." At one point of her testimony the prosecutrix in this case testified that although the assistant circuit attorney gave her the word "vagina" she knew that as her privates before she was given that word.

■ In a jury trial in a statutory rape prosecution where the prosecutrix is reluctant to testify or appears to be timid or in fear, the judge is permitted to exercise discretion in allowing leading questions to be propounded to her, *State v. Palmer,* supra, l. c. 443[3]. Where the judge, as trier of fact in a jury waived case, finds it necessary to ascertain the impact of the witness's testimony on elements of the offense, we believe he has no less discretion and the likelihood of affecting the jury by the inquiry is absent. From our reading of the transcript we conclude that the trial court did not abuse its discretion in this case by asking leading questions of the prosecutrix, particularly where they became necessary to clarify questions raised by the cross-examination of that witness by inartful questions proposed by appellant's counsel.

■ If, however, corroboration of penetration had been found necessary in this case, which we have held it was not, there was corroboration furnished by the testimony of the forensic chemist of the St. Louis Metropolitan Police Department, Joseph Crow, that chemical testing of stains found on the prosecutrix's panties showed the presence of male seminal fluid. Corroboration of the element of penetration may be circumstantial, and ejaculation is one of the circumstances tending to show penetration. *State v. Martin,* supra, l. c. 85[1]; *State v. Nevels,* 537 S.W.2d 824, 827[1] (Mo.App. 1976).

■ In a statutory rape case where the victim is a child of tender years, acts which might cast doubt on the credibility of a more mature witness must be viewed in the context of the entire evidence in the case. The evidence that the prosecutrix returned to the service station on two subsequent

occasions after the alleged rape and the failure of the prosecutrix to report the incident to her sister goes to the weight of testimony only; it does not destroy it. She did, however, report the rape to her mother as soon as her mother was brought to her sister's home by the police.

For these reasons we find that there is no merit in this point.

Appellant's second point reads as follows: "The court erred and abused its discretion by questioning the prosecutrix, by commenting upon the testimony of defense witnesses, by entering into the direct and cross examination of witnesses and by improperly interfering in the trial of the case by defense counsel, thereby depriving defendant of a fair and impartial trial."

This point, as stated in the Points Relied On portion of appellant's brief, preserves nothing for this court to review. It fails to meet the mandatory requirements of Rule 84.04(d) as more fully explained in *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978). This point constitutes nothing but a bare allegation that the trial court erred in conclusionary terms, does not specify why the questioning of the prosecutrix constituted an abuse of discretion; what comments upon the testimony of witnesses constituted an abuse of discretion and why; what the court did by way of "entering into the direct and cross examination of witnesses" and why it constituted an abuse of discretion; and finally, in what manner and how the trial court interfered in the defense counsel's conduct of the trial. Certainly, it is not every instance in a court tried case where the court, as the trier of fact, propounds a question to the prosecuting witness, nor where he comments upon the testimony of witnesses, nor where the trial court conducts some direct and cross examination of witnesses that the court is guilty of an abuse of discretion. This point also does not specify how or in what way the trial court interfered with defense counsel in the trial of the case.

To meet the mandatory requirements of Rule 84.04(d) it is necessary to state the ruling of the court or the action of the court appellant contends was error and then state with sufficient specificity for both opposing counsel and the reviewing court to discern, without the necessity of referring to the argument portion of appellant's brief, why the ruling or action of the trial court was error. As the court in *Thummel,* supra, points out, l. c. 686, the requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts, but a clear statement of the points relied on relieves the appellate court of the burden of *searching the argument portion of the brief,* or even worse, to search the record on appeal, to determine and clarify the nature of the contentions asserted; this results in a waste of judicial time in this period of increased litigation and heavy caseloads and alone sufficiently justifies the existence of the Rule. Appellate courts of this state can no longer afford the luxury of searching the argument portion of an appellant's brief for the purpose of discovering whether sufficient particularity might be found therein to enable them to determine what actions of a trial court are erroneous. *Griffin v. State,* 513 S.W.2d 706, 708 (Mo.App.1974).

For the reasons aforesaid, we hold that this point was not preserved for review and therefore do not decide it.

Appellant's next point relied on is directed to the failure of the trial court to sustain his motion to suppress identification testimony because the conduct of the identification procedures prior to the trial of the cause were so unduly suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law. The basis for this alleged error as stated in the point is that a photograph allegedly seized at 317 DeBalivere, the apartment wherein Ms. Thomas was taken into custody, was received into evidence over objection without the state having established the chain of custody of said photograph; that he was thereby deprived of the right to cross examine any person concerning the manner of its alleged seizure and

the whereabouts of the exhibit subsequent to its seizure and whether it was the same photograph seized on January 15, 1975.

Appellant filed a motion to suppress identification testimony on June 1, 1976 which was taken with the case; the grounds for this motion was that the conduct of the identification procedures at a pretrial confrontation were so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law. As we understand appellant's argument with respect to the "identification procedures" he contends were unnecessarily suggestive, they are directed to a photograph viewed by the prosecutrix in the presence of several police officers in the police station after the arrest of Ms. Thomas; the testimony of the prosecutrix that while she was holding the photo the police officers told her that the man pictured in the photo was named "Lonnie," and that he was a bad man, and that "he does little things like that to little girls." She further testified that when they showed her the picture she said "Yeah, that was the man."

■ In determining whether a pre-trial confrontation was so unduly suggestive as to warrant suppression of the in-court identification the following must be considered: (1) the presence of an independent basis of identification of the defendant, (2) the absence of any suggestive influence by others, and (3) positive courtroom identification. *State v. Rutledge*, 524 S.W.2d 449, 456[4] (Mo.App.1975); *State v. Dancy*, 541 S.W.2d 35, 37[1] (Mo.App.1976). If elements (1) and (3) of this three part test are satisfied, the identification testimony may be admitted. *State v. Holland*, 534 S.W.2d 590, 592[3] (Mo.App.1976).

■ According to her testimony the prosecutrix had the opportunity to observe the appellant several times prior to, during and after he sexually attacked her. She related in considerable detail and accuracy the events surrounding the rape and the storage room of the service station wherein the rape took place; the evidence shows this service station was operated by the appellant. At trial she identified the appellant without any hesitancy, pointing out the difference in hair styles he wore on the day of the rape and the day of trial. From her testimony we conclude that the trial court could find that her in-court identification of the appellant as the rapist had a source independent of the pre-trial showing of the photograph in the police station the evening of the attack and was therefore admissible. We hold, therefore, that there was no error in the action of the trial court overruling the appellant's motion to suppress identification.

The second part of appellant's point—that the trial court erred in admitting into evidence state's Exhibit No. 7, a photograph—was also raised independently as Point No. V in his brief. The argument in support of this contention is that there was no proper authentication of the photograph, there was no evidence to establish the chain of custody of the exhibit nor to show that it was in the same condition as it was when seized on January 15, 1975; that the photograph admitted into evidence and shown to the judge had the word "rape" written on it and was therefore highly prejudicial when shown to the trial judge in this jury waived case.

We must confess that the evidence with respect to the photograph admitted into evidence was somewhat confusing due to a contradiction in the testimony of the prosecutrix and two police officer witnesses with respect to its origin. According to the police officer witnesses, when they accompanied the prosecutrix to Ms. Thomas' apartment on January 15, 1975, the prosecutrix pointed out to the officers the photograph among a number of snapshots on a night stand or dresser and identified the person portrayed therein as the man who had raped her. This photo was taken into the possession of an Officer Tayborn, but he did not testify at the trial. The police officers testified that they recognized the man portrayed in this photograph as the appellant, and that they knew him from prior contacts with him in the course of their police work. After the prosecutrix pointed out the man in the picture as the one who raped her,

several of the police officers present identified the man in the picture as "Lonnie Leigh," but this was not done in the presence of the prosecutrix who had been taken from the apartment to the police car in the interim. Based upon the prosecutrix's identification of the man portrayed in the photograph as her assailant, an order was put out for the arrest of the appellant.

Earlier in the trial, the prosecutrix testified during direct examination in the state's case that she saw no pictures in Ms. Thomas' apartment and that she was shown a picture for the first time after her arrival at the Seventh District Police Station. When she saw the picture at the police station she did not know the name of the man depicted therein, but she did recognize the man portrayed there as the man she saw in the back room of the filling station who assaulted her. She first learned the name of the man portrayed in the photograph when she left the police station.

After two days—July 1 and 2—the trial was recessed. On July 9, 1976, prior to proceeding with the trial, appellant's counsel filed two separate motions to compel production of evidence. The first motion sought the production of the photograph the police officers testified had been seized from Ms. Thomas' apartment, and the second, a photograph of one "Lonnell Thomas," whom a defense witness testified fit the description of the appellant.[1] During the course of some discussion relative to these motions, the assistant circuit attorney advised the trial court that she would bring the photograph seized from Ms. Thomas' apartment if she could find it. On the basis of this promise, the trial court sustained the motion with respect to this photograph.

At the conclusion of the evidence on July 2, 1976, the cause was laid over to August 6, 1976, at which time the assistant circuit attorney announced that she had located the picture which was seized from Ms. Thomas' apartment, and handed the photo to the trial judge, who remarked, "I am curious as to who put the word 'rape' on top of the picture." Appellant's counsel complained that he had not been shown the photo and objected to the assistant circuit attorney showing it to the court. He wanted to know how the word "rape" got on the photograph, and further objected to the court having seen it with the word "rape" on it; that there was no showing who had seized it, where it was seized and when it was seized. The assistant circuit attorney addressed the trial court and said that she had obtained the photograph from Patrolman Richardson, one of the police officers who testified to observing the prosecutrix point to the photograph in Ms. Thomas' apartment on January 15, 1975, and that he saw this photograph in the possession of Officer Tayborn that day. Appellant's counsel objected at this point for the further reason that his client's Sixth Amendment rights were being violated because he was unable to cross-examine any witness about this picture. All objections to the photograph were overruled and it was marked for purposes of identification as state's Exhibit No. 7.

At the close of all of the evidence[2] the state offered into evidence Exhibits Nos. 1 through 8 and appellant objected to the receipt into evidence of state's Exhibit No. 7, the photograph of appellant, in an almost unintelligible objection. As best we can decipher this objection, it was on three grounds: (1) the photo was in the care and

1. Appellant's defense was alibi; that at the time of this occurrence he was confined to the workhouse of the City of St. Louis and it was "Lonnell Thomas," who greatly resembled him, who was observed by a witness on the premises of Lonnie's Shell Service Station on the day of this occurrence. So far as the record on appeal shows, no photo of "Lonnie Thomas" was produced at trial and the failure to produce any such photo, if it existed, is not before us on appeal.

2. To accommodate the appellant's witnesses this case was tried in an unusual manner. While the state commenced with its evidence, interruptions to permit defendant's witnesses to testify occurred. As a result, appellant's witnesses' testimony was concluded prior to the end of the state's case and therefore the offer of these exhibits by the state took place at the conclusion of all of the evidence.

custody of the assistant circuit attorney trying the case, (2) it could have been a photograph "stapled to the bulletin board shown at Division 7," [3] and, (3) it could have been a photograph shown to the prosecutrix at the police station after the arrest of Ms. Thomas. The trial court overruled these objections and admitted the photograph into evidence.

No witness in the case identified this photograph as the one seized from Ms. Thomas' apartment. All the trial court had before it at the time this exhibit was received into evidence was the statement of the assistant circuit attorney that it was this picture which was seized from the apartment of Ms. Thomas on January 15, 1975. No explanation was made how the word "rape" happened to be written or printed on the picture.[4] There was no evidence whether this was the same picture shown to the prosecutrix at the Seventh District Police Station after she was taken there from Ms. Thomas' apartment. It is clear that the only way the assistant circuit attorney could obtain knowledge of the picture would have to come from someone other than herself; she was not present at the time of the confrontation in Ms. Thomas' apartment when, according to the police officer witnesses, a picture of the appellant was seized.

■ In a jury-waived case a certain amount of latitude in the admission of evidence is allowed, and even where an error is made in the admission of some evidence, except where the trial court relied on that evidence in arriving at its findings of fact and conclusions of law, such error is ordinarily held to be non-prejudicial. This is so because the rules of exclusion in the law of evidence as applied in a court of law are largely as a result of the jury system and serve the purpose of keeping from the jury all irrelevant and collateral matters which might tend to confuse them or mislead them from a consideration of the real question in issue; when an action is to the court sitting without a jury, the rules of exclusion are less strictly enforced. *State v. Whaley,* 512 S.W.2d 431, 435[7] (Mo.App.1974). It is assumed that the trial court will not be confused or misled by what is irrelevant and incompetent. There is no rule of law which requires the court to consider immaterial and incompetent evidence, although admitted in the case; on the contrary, it should be disregarded by the court and it will be presumed that the court in determining the case will consider only such evidence as is competent and relevant. 89 C.J.S. Trial § 589, p. 374.

■ The trial court, in its Findings of Facts, found: ". . . Officers Edwards, Tayborn and Richardson and assisting officers went to 317 DeBalivere to the apartment pointed out by R— J— as the place where she had been held from 3:00 to 6:00 p. m. Upon entering the apartment R— J— picked up a photograph of a man and stated that he was the person who had inserted his sexual organ into her sexual organ. The officers recognized the picture as being one of Lonnie Leigh." In so finding, the testimony of the police officers who appeared at trial was accepted by the trial court and that of the prosecuting witness which was in disagreement therewith was not. The credibility of witnesses' testimony is for determination of the trier of facts; in a jury-waived case, the court. *State v. Bohlen,* 545 S.W.2d 673[3] (Mo.App.1976). An appellate court does not weigh evidence on appeal from a conviction in a jury-waived criminal case. *Id.* However, to support this finding of fact it is not necessary that the trial court relied on state's Exhibit No. 7 and nowhere in these findings is that Exhibit even referred to nor mentioned.

---

3. Appellant's counsel apparently meant "District" in this context.

4. Despite the fact the parties stipulated that all exhibits offered and received in evidence and referred to in the transcript of the record on appeal, but not incorporated therein could, pursuant to Rule 81.15, be separately filed and deposited with the Clerk of this Court, state's Exhibit No. 7 has not been so deposited with the Clerk of this Court and we have had to refer to the transcript to understand what this Exhibit is. For that reason we are somewhat vague with respect to what it portrayed and how the word "rape" was put on the photograph.

What has just been said is equally applicable to the appearance of the word "rape" on this exhibit. It is apparent from the trial judge's comment that he was curious concerning how the word got on a picture allegedly seized from Ms. Thomas' apartment months prior to the arrest of the appellant in Tennessee. His curiosity, so far as this record shows, was never satisfied. For this reason we conclude that it is safe to assume that the experienced trial judge was neither influenced by the appearance of the word on the photograph nor was misled by this irrelevant and immaterial evidence, more particularly in view of the fact there is no indication in the findings of fact that any consideration was given to this circumstance in arriving at said findings.

We rule this point and Point V of appellant's Points Relied On against appellant and find no error which prejudiced the rights of the appellant and entitled him to a reversal of his conviction and a new trial.

 Appellant also attacks the finding of the trial court that the prosecutrix was competent to testify in the cause. However, this Point Relied On, as stated, fails to state wherein and why the action of the trial court in so finding the prosecutrix competent was erroneous as required by Rule 84.04(d) and *Thummel v. King,* supra, and has not, therefore, been preserved for review in this court.[5] Nevertheless, we have read the testimony of this witness, find that she was over the age of ten at the time she testified, and therefore was prima facie competent to testify; the burden was upon the appellant who challenged her competency to prove incompetency. *State v. Obie,* 501 S.W.2d 513, 514[1] (Mo.App.1973). This burden he did not carry. Although there were some inconsistencies in the child-witness's testimony, these were to collateral matters and inconsistent testimony of a child-witness relating to collateral matters which do not have the effect of vitiating the child's entire testimony, merely affect

credibility of said witness and do not incapacitate the child from giving testimony. Where, as here, the nature of the occurrence or the child's relation to the occurrence in question is such as to create a stronger impression on the child than collateral matters, a trial court is entitled to consider that in passing on the child's competency to testify at trial. *State v. Ball,* 529 S.W.2d 901, 905[7, 9] (Mo.App.1975). The competency of a child as a witness is determined by the trial court on the basis of the child's apparent capacity, and the determination that a child is qualified to give testimony will be reversed only for a clear abuse of the trial court's discretion. *State v. Ball,* supra, l.c. 904[2]. We find no such abuse here and rule this point against appellant.

The next ground for reversal of appellant's conviction raised in his brief is that the trial court erred in admitting into evidence a police report because it was based on hearsay, and also erred in finding beyond a reasonable doubt that the rape occurred at between 10:15 and 10:30 a. m. on January 15, 1975, because there is no substantial evidence to support this finding.

If we understand appellant's point, he contends that the court erred in admitting into evidence a police report dated January 16, 1975, prepared by Patrolman Arthur Moes, a Sixth District Police Officer, containing information he received when he went to the St. Louis City Workhouse on January 16, 1975, in response to a report by the Workhouse authorities that one of the inmates was missing; and more particularly, his report of a conversation he had with Sammie Williams, the assistant warden, and Augie Brown, a guard at the Workhouse, and the trial court's using this hearsay evidence as a basis for its finding of fact that the rape occurred between 10:15 and 10:30 a. m. on January 15, 1975.

Patrolman Moes testified at trial concerning his visit to the Workhouse on January 16, 1975, and his conversation with Messrs.

---

5. As stated in appellant's brief this point reads: "The court erred and abused its discretion by finding that R— J— was competent to testify in the instant cause, thereby being highly prejudicial to the defendant and depriving him of a fair and impartial trial."

Williams and Brown with respect to the failure of appellant to return to the institution the prior evening. The witness further testified that this information was incorporated into his police report and that he had used that police report to refresh his memory. At this point, the trial court asked to see the police report and was handed it by the witness; when this was done, defense counsel asked that the police report be marked as an exhibit and the court reporter thereupon marked the police report for the purpose of identification as State's Exhibit No. 8. Defense counsel then developed from this witness that he did not, of his own knowledge, know when appellant left the workhouse on the 15th of January, 1975, and that any knowledge he had was obtained from the two men he spoke with at the workhouse, and both men stated that the appellant left the workhouse at nine a. m. and was supposed to be back at ten o'clock that night.

At the conclusion of the state's evidence the assistant circuit attorney offered all of the state's exhibits, 1 through 8, into evidence and the trial court inquired whether defense counsel had any objection. No objection was made at this time to the admission into evidence of state's Exhibit No. 8, although defense counsel did interpose an objection to the receipt into evidence of state's Exhibit No. 7 and refused to agree that a blanket which appears in state's Exhibit No. 2 was the same blanket shown at trial and on which testimony established that seminal fluid was found.

As we read the point presented to us for review, it is the viewing of the police report by the trial judge, its receipt into evidence over objection, and the making of a finding of fact concerning said report, which is alleged to be error and an abuse of discretion on the part of the trial court; any objection to the testimony by Patrolman Moes which might be hearsay is not specifically set out in the point as stated, and is, we conclude, not before us for review.

■ In an absence of an objection to the police report at the time it was offered and admitted into evidence, any error in its receipt into evidence is not preserved for review by this court. *Fullington v. Southeastern Motor Truck Lines,* 254 S.W.2d 246, 251[10] (Mo.App.1953).

■ The finding of the trial court that the rape took place between 10:00 and 10:30 a. m. was, we hold, supported by substantial evidence. The testimony of both the victim and her brother established the times of events of the day. According to the prosecutrix she went to her sister's home on Waterman Avenue at approximately 8:30 a. m. and ate breakfast. After breakfast she went to Reed's, a store, to get two sodas for her sister. After she left the store she started to return to her sister's home but ran into Ms. Thomas who was standing outside the "Shell" filling station on Waterman across the street from Reed's. After a conversation about whether she would like to earn $3.00 mopping the floor and cleaning the bathroom, Ms. Thomas told her to come here and she'd show her. She went into the station at that time and appellant was there fixing cars and wearing a blue uniform. Two white males were also at the station at this time. After they got into the interior of the service station Ms. Thomas propositioned her, pulled her into a small storage room and closed the door. Ms. Thomas then proceeded to partially undress the prosecutrix and disrobed herself and pushed the prosecutrix down onto a quilt on the floor of the room and laid on top of her. While she was in this storage room with Ms. Thomas the appellant came in two separate times; it was on the second occasion that he raped her. The prosecutrix testified that the first time she went to the filling station—she went there three times that day—was sometime around 9:30 or 10:00 a. m.; she fixed this time because it was around 9:30 a. m. when she left her sister's house to go to the store. The second time she returned to the service station was about 11:00 or 11:30 a. m. and then she was with her brother. The last time she went to the service station was between 3:00 and 3:30 p. m. that afternoon.

The prosecutrix's brother, fourteen years of age at the time of trial, testified that his

sister went to the store "about 9:00 or 10:00" and that she came back from the store at about 10:30 and that he and his sister returned to the filling station together at about 11:00 or 11:30 and he saw the appellant there at that time. He identified the appellant at the time of trial as "Lonnie," the man he saw at the filling station when he and his sister went there on the morning of the 15th of January, 1975, and further testified that he went to the Burger Chef for that man at around noon of that day and got something from Burger Chef for the appellant, although he couldn't remember what it was he got at Burger Chef.

No one developed the amount of time expended between the time Ms. Thomas took the prosecutrix into the storage room, perpetrated her molestation of the child, and the time when the rape took place, through the questioning of the prosecutrix, who was the only witness as to the facts surrounding the rape itself. However, we conclude that there was substantial evidence from which the trial court could reach the finding of fact that the rape did, in fact, occur between 10:00 and 10:30 a. m. on January 15, 1975, without any reliance on the testimony of the police officer concerning the information furnished him at the workhouse or the contents of the police report.

> Finding of Fact No. 10 is as follows: "Patn. Arthur Moes received an assignment to the St. Louis Medium Security Institution on January 16, 1975, for a report of a missing person, that the call was received at 6:25 p. m. Patn. Moes was told that an inmate by the name of Lonnie Leigh was released on an administrative leave at approximately 9:00 a. m. on January 15, 1975, and had failed to return."

Finding of Fact No. 11 refers to the recapture of the appellant in Chattanooga, Tennessee, on March 22, 1975, and his return to St. Louis after he waived extradition on March 19, 1975. These two findings of fact are relevant to the question of flight as well as any evidence as to when the appellant departed from the workhouse on January

15, 1975. Inasmuch as the trial court did not specify that it employed this evidence to substantiate the time of the occurrence of the rape, we will assume that the trial court was not misled or confused by this "hearsay" evidence in that respect, but arrived at its finding of fact as to when the rape occurred upon the basis of the testimony of the prosecutrix, her brother, and the reasonable inferences to be deduced therefrom.

We rule this point against appellant.

Appellant next contends that the trial court erred and abused its discretion by overruling his motion to produce a police department photograph of "Lonnell Thomas." In support of this alleged error the appellant cites Rule 25.32(A)(9), which requires that the state disclose to defendant's counsel any material or information, within the possession or control of the state, which tends to negate the guilt of the defendant as to the offense charged. We find no merit to this point.

The basis for this allegation is nebulous at best. During redirect examination of one of appellant's witnesses, Larry James Troup, defense counsel inquired if he knew one "Lonnell Thomas" and he replied that he did, and that Lonnell Thomas was known as "Big Lonnie" and that he was about the same height and weight as appellant but that he could tell them apart. He testified that they had the same facial features. Defense counsel then asked him if he saw Lonnell Thomas at the service station when he was there on January 15, 1975, about 3:00 or 4:00 p. m. at a time when he did see appellant on the filling station premises. He replied: "No."

Thereafter, as we previously noted, appellant filed a motion to produce a photograph of Lonnell Thomas on July 9, 1976, and, on that same date, during a discussion with the trial court concerning the motion, his defense counsel was asked: "What is the relevancy of this Lonnell Thomas?" The response was that counsel for appellant thought the testimony would show that Lonnell Thomas was at the service station on the date of the occurrence, and that he thought *Mr. Troup said he saw him.* A

discussion then ensued over State's Exhibit No. 7—the photograph of the appellant seized from Ms. Thomas' apartment—and no ruling was requested nor made on appellant's motion to produce a photo of the said Lonnie Thomas.

Subsequently, one Theodore Wright, Jr., was called as a defense witness, and he testified that on January 15, 1975, he was at the service station at a little after eight o'clock in the morning in the performance of his duties as an attendant, and he worked there until sometime prior to one o'clock in the afternoon when he left to take his wife and children to a picnic. He did not see appellant there that day but he did see Lonnell Thomas there at about 10:00 a. m., standing by the gas pumps. He also testified that Mr. Thomas and appellant were "approximately the same diameter in every way."

After the state closed its evidence appellant's counsel renewed his request for the production of the photograph of Lonnie Thomas and the assistant circuit attorney replied that she didn't have a picture of the man, that she didn't know if there was one and she had made no effort to see if there was one. The court remarked that she had not been ordered by the court to get the photograph.

■ With the record in this condition, and in the absence of any showing that the police department or the state had a photograph of one Lonnie Thomas in its possession which was suppressed, we are unable to find that the trial court erred to the prejudice of the appellant. Suppression of material evidence justifies a new trial irrespective of the good or bad faith of the state in its failure to comply with the Rule, *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). But in order to be error, it must be alleged and proved that the state knowingly and willfully suppressed the evidence. *State v. Jackson,* 551 S.W.2d 557[11] (Mo.App. 1975). There is no evidence in this record to support a finding to that effect.

We rule this point against the appellant.

In his next point appellant contends that the trial court erred and abused its discretion in finding beyond a reasonable doubt that the defendant came under § 556.280 RSMo.1969, the "Second Offenders Act," without making a specific finding relative to a prior felony. He objects to the failure of the trial court to make the finding that the appellant was convicted of a particular felony on a prior occasion but also that there was insufficient evidence to support a finding beyond a reasonable doubt that the defendant came within the statute.

The indictment on which appellant was brought to trial alleged that the defendant had been previously convicted on a charge of carrying a concealed weapon, a felony, § 564.610 RSMo.1969. The trial court, in its Conclusions of Law, Judgment, Order and Decree, found beyond a reasonable doubt, that the "defendant was previously convicted of a felony, and sentenced and imprisoned therefore, and thus comes under the provisions of V.A.M.S. 556.280," and assessed his sentence at thirty years in the custody of the Missouri Department of Corrections. After overruling a timely filed motion for new trial, the trial court afforded the appellant allocution and then sentenced him to the term previously assessed.

■ We would initially point out that this was a jury-waived trial wherein the trial judge, not a jury, assesses the punishment and imposes the sentence of imprisonment. The purpose of the Second Offender Act, as amended in 1959, was so that trial courts, out of the hearing of the jury and prior to submission of the case, should determine whether the defendant had a prior conviction and if there was a finding that he had, the offender should receive punishment after conviction of the charge for which he is being tried as the trial judge determines. It provides a procedure whereby a defendant could be tried under the Habitual Criminal Act without disclosing to the jury that he had been previously convicted of a felony. The Act is procedural in

nature and does not increase the punishment upon a conviction on the charge being tried. *State v. Morton,* 338 S.W.2d 858, 863[7] (Mo.1960). It serves, also, to keep matters of prior convictions of felony offenses from the jury, leaving the matter of sentence to be imposed within the permissible limits for the particular offense to the trial judge. *State v. Maxwell,* 376 S.W.2d 170, 174[13] (Mo.1964).

■ When this case was tried the punishment for statutory rape was imprisonment by the Division of Corrections for not less than two years, § 559.260 RSMo.1969, as amended, Laws 1975, p. 408 § A. There was ample evidence in the record that appellant had previously been convicted of the crime of carrying a concealed weapon and had been imprisoned on said conviction; however, even had there not been, in this court tried case the Act was inapplicable and whether there was or was not substantial evidence supporting the trial judge's finding in this respect would not be a basis for reversing appellant's conviction and affording him a new trial. We rule this point against appellant.

Appellant's final point is that the trial court erred and abused its discretion in making findings of fact that (1) Patrolman Tayborn went to 324 DeBalivere, the location of Lonnie's Shell Station where he contacted Patrolman Douglas McGuire of ETU (Evidence Technician Unit) who took photographs of the service station and seized a yellow blanket that the prosecutrix had described to Officer Tayborn, stating that she had been forced to lie upon it while the assault took place; that Patrolman McGuire transported the blanket to the Police Department Laboratory and (2) that Joseph Crow, a seriologist for the St. Louis Police Department Laboratory, testified that an analysis of the stains on the blanket and the underpants of the victim revealed the presence of seminal fluid and that the quantity was such that it could have only been discharged by a male.

Appellant's contentions of error with respect to these findings are directed to the blanket, and its admissibility. The prosecutrix testified at trial that she was lying on a blanket when she was raped by the appellant, and she described the blanket as a "blue" blanket. The blanket introduced at trial on which seminal fluid was found was a yellow blanket. The thrust of appellant's point is that the state failed to lay a proper foundation for the admission of the blanket into evidence and that its chain of custody was not established.

When asked at trial concerning what occurred when she was in the small storage room, the prosecutrix replied that she was lying on a quilt. The following line of inquiry by the assistant circuit attorney took place:

"Q. And do you remember what color that was?

A. Blue, I think.

Q. Now you can't think; you have to be sure. Do you remember?

MR. FABRI: Objection, She's impeaching her own witness. The young lady just testified—

MRS. BAKER: If the Court please

THE COURT: Overruled.

Q. Now don't think. If you remember, say yes or no. If you don't remember, then say you don't remember. Do you remember what color it was?

A. Blue."

There was other testimony in the case that the prosecutrix described in detail the room and its contents to the police officers and a search of the room resulted in this yellow blanket being seized as evidence. The blanket was subjected to chemical tests at the police laboratory and it revealed the presence of seminal fluid. At the time it was seized it was marked by Patrolman McGuire with his initials and his department serial number. He held the blanket as evidence.

Joseph Crow, a criminalist for the St. Louis Metropolitan Police Department, testified for the state from a Laboratory Report of the St. Louis Metropolitan Police

Department of tests conducted on some specimens by one Ruth McKnight, a seriologist with the Police Department. Appellant's trial counsel stipulated that the document from which the witness testified was admissible as a business record and no objection was made to its contents. According to this laboratory report, as read into evidence, it was a report with reference to "R_ J_," the victim, and "Darlene Thomas, the suspect" on a charge of "Molesting a minor with immoral intent, 1–15–75." The examination was made for the Seventh District Police Station. According to the report "Specimens (were) Q1," a yellow blanket and "Q2", multi-colored panties, the property of the victim. The results of the examination were that a stain on the yellow blanket was determined to be seminal fluid by the acid phophatase test; no spermatozoa were found under microscopic examination. The same test was positive for a stain found in the crotch of the panties of the prosecutrix, and again no spermatozoa were found on microscopic examination. It further recited that the specimens would be retained in the laboratory pending disposition of the case.

■ At the end of all of the evidence, when the state offered all of its exhibits, 1 through 8, into evidence,—the yellow blanket was state's Exhibit No. 6—appellant's counsel stated to the trial court in response to the inquiry whether he had any objection:

"We have no objection to the exhibit which is shown as the yellow blanket or the exhibit known as the panties of the alleged victim."

The trial court then announced: "They will be admitted."

Any error in the admission into evidence of this Exhibit was, in view of this statement of trial counsel, waived and not preserved for review. *Fullington v. Southeastern Motor Truck Lines, supra.*

■ Thus, with the yellow blanket in evidence without objection, we believe that despite the conflict in the prosecutrix's testimony as to its color, the trial court could, in weighing the evidence, conclude that she was pressured into her answer relative to the color of the blanket by the prosecutor's admonishment when she used the terms "I think," and could find, from the other circumstances in the case, that this was, in fact, the quilt or blanket on which the prosecutrix lay as the rape was perpetrated. There is no evidence that there was any other blanket in the room where the attack occurred, and this was the blanket taken by Officer McGuire after he arrived on the scene from the room where the attack occurred. These circumstances, taken with the presence of seminal fluid found on her panties, are corroborative; the identification of the blanket by the victim under these circumstances is not required to be postivie, absolute, certain, or wholly unqualified. *State v. Johnson,* 539 S.W.2d 493, 515[48] (Mo.App.1976).

■ With respect to the chain of custody issue, it is only necessary that the evidence afford the trial court reasonable assurance that the item offered in evidence was the same and in the same condition during the interim period while in the possession of the police authorities; it is not necessary that the state produce evidence which excludes every possibility of interference with the item sought to be introduced in evidence. *State v. Lang,* 536 S.W.2d 52, 54[6, 7] (Mo.App.1976). Where, as here, the blanket was positively identified by a police officer who took it into custody and marked it with his initials and his department serial number, and the laboratory report shows that it was received there on the same date of the alleged offense and the date on which it was seized from the scene of the crime and that it was to be retained in the custody of the laboratory until the case was disposed of, we are of the opinion that a sufficient chain of custody has been established in the absence of any evidence which might cast a shadow of doubt upon the integrity of the exhibit.

For these reasons we also rule this point against the appellant.

Judgment affirmed.

WEIER, C. J., and GUNN, P. J., concur.