STATE of Missouri, Respondent,

v.

Gary MANDRELL, Appellant.

No. 53099.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 2, 1988.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

Fortus, Anderson & Rivera, Rodolfo Rivera, Clayton, for appellant.

SIMON, Presiding Judge.

Appellant, Gary Mandrell, appeals his conviction in this court tried case for stealing by coercion in violation of § 570.030 RSMo (1986). On appeal, appellant contends the trial court erred in: (1) failing to grant appellant's motion for acquittal at the close of the State's case because there was insufficient evidence to find appellant guilty; (2) excluding evidence of civil suits against the victim in that said evidence went to the credibility of the State's main witness; (3) allowing the prosecutor to point out during closing argument that appellant exercised his Fourth Amendment right against unwarranted searches by refusing to empty his pockets without a search warrant; and, (4) rendering a verdict of guilty when said verdict was against the weight of the evidence in that the State failed to prove beyond a reasonable doubt appellant's guilt. We affirm.

The evidence in the light most favorable to the State is as follows: The victim, Bufus King, a thirty-three year old machine operator, received his paycheck for $170.27, after taxes, on July 17, 1986. At the end of his shift at 11:00 p.m., he went to his home in Pagedale and watched video cassettes with his girlfriend. Around 2:00 a.m. on July 18, 1986, Mr. King drove his red Triumph TR–7 automobile to a 24–hour check cashing service on North Kingshighway in the City of St. Louis. The Triumph was not properly licensed, so he took off the expired license plates and replaced them with one plate from his girlfriend's car. He placed the expired plates behind the passenger seat.

There was a $2.75 check cashing fee, so Mr. King received $167.52 in cash. Because he had no pockets, he rolled up the cash and put it in his left-leg sock. As he was returning home he was stopped on Wells Avenue by appellant, who was an on-duty police officer for the City of St. Louis. Appellant pointed out that Mr. King only had one license plate on his car, and he asked to see Mr. King's driver's license. After a short search, Mr. King told appellant that he could not find the license because it had fallen between the console and the seat.

Appellant asked Mr. King to step out of the automobile and proceeded to search it. Appellant asked Mr. King if he had any weapons and was told there was a handgun on the front seat of the car. Appellant seized the unloaded gun, which Mr. King stated he had brought with him for protection while he cashed his paycheck. Appellant thereafter searched Mr. King and observed the bulge in Mr. King's left sock. After being asked, Mr. King informed appellant that the bulge was money.

Appellant then told Mr. King to get into the back seat of the police car. Appellant sat in the front seat. Mr. King informed appellant that the handgun was a starter pistol which he had obtained from his father and that he did not have any shells for it. Appellant continually advised Mr. King that he could "take him in for that gun" and that, "It's going to cost you money for a lawyer and it's going to cost you money to get out of jail."

Appellant then asked Mr. King to give him the money in Mr. King's sock. Mr. King complied. Appellant thereafter counted the money and put some of the bills in his upper left shirt pocket and handed the rest to Mr. King. Appellant then told Mr. King that he could leave. As appellant drove off, Mr. King noted the car number, and the precinct number from the car.

When Mr. King returned home, he called the Seventh District to report the incident. He met with several officers from the Seventh District, as well as an officer from the Internal Affairs Division.

When appellant was first confronted with Mr. King's complaint, he admitted pulling Mr. King over, searching the car, and finding the handgun. Appellant denied taking any money and refused to empty his pockets. After a search warrant was obtained, appellant's pockets yielded the following: some keys, his driver's license, a police department identification card, and $122.00 (consisting of four twenty dollar

bills, three ten dollar bills, one five dollar bill, and seven one dollar bills).

At trial appellant called a circuit court clerk to testify regarding personal property tax suits brought against Mr. King. The prosecution objected to the proposed testimony as being irrelevant. Appellant's attorney made an offer of proof and explained that the testimony would establish Mr. King's lack of credibility, as he had testified earlier that he had not been sued to collect personal property taxes. The trial court judge excluded the witness.

The trial court found appellant guilty and sentenced him to three years imprisonment, the execution of which was suspended; appellant was placed on probation for eighteen months.

The first point appellant raises on appeal is that the trial court erred in failing to grant defendant's motion for acquittal as there was not sufficient evidence for the court to find appellant guilty.

Section 570.030 RSMo (1986) provides, in pertinent part, as follows:

1. A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion.

.    .    .    .    .

3. Stealing is a class C felony if:

.    .    .    .    .

(2) The actor physically takes the property appropriated from the person of the victim.

Section 570.010(3) RSMo (1986) provides the definition for coercion:

(3) "Coercion" means a threat, however communicated:

(a) To commit any crime; or

(b) To inflict physical injury in the future on the person threatened or another; or

(c) To accuse any person of any crime; or

(d) To expose any person to hatred, contempt or ridicule; or

(e) To harm the credit or business repute of any person; or

(f) To take or withhold action as a public servant, or to cause a public servant to take or withhold action; or

(g) To inflict any other harm which would not benefit the actor.

A threat of accusation, lawsuit or other invocation of official action is not coercion if the property sought to be obtained by virtue of such threat was honestly claimed as restitution or indemnification for harm done in the circumstances to which the accusation, exposure, lawsuit or other official action relates, or as compensation for property or lawful service. The defendant shall have the burden of injecting the issue of justification as to any threat.

■ In the first of two subpoints contained within his first point on appeal, appellant maintains that the State failed to prove its case in that there is no evidence establishing appellant's use of coercion. We note that appellant does not contest the sufficiency of the evidence regarding any of the other elements of the crime; therefore, our focus centers on the proof of the element of coercion.

The evidence adduced at trial, and its reasonable inferences, indicates that appellant, an on-duty police officer, threatened Mr. King with arrest and jail. Appellant told Mr. King that, "it's going to cost you money for a lawyer and it's going to cost you money to get out of jail." After telling Mr. King that he could lock him up for a concealed weapon charge, appellant asked Mr. King to give him the money that Mr. King had in his sock. Mr. King testified that he feared going to jail and that he would not have given the money to appellant had appellant not been a police officer.

Clearly, these facts constitute a threat to accuse Mr. King of a crime (§ 570.010(3)(c)) and to take or withhold action as a public servant (§ 570.010(3)(f)). Therefore, there was sufficient evidence in the record to establish appellant's coercion as statutorily defined.

■ In appellant's second subpoint, he maintains that Mr. King's testimony was

inconsistent in two points and claims the testimony ought to be discounted and/or disregarded due to his questionable credibility. The Court in *State v. Newberry*, 605 S.W.2d 117 (Mo.1980), declared:

A defendant is not entitled to a judgment of acquittal because of discrepancies or conflicts in the testimony of the State's witnesses. Conflicts in the evidence, the determination of the credibility of the witnesses and the weight to be given their testimony are within the peculiar province of the finder of fact. The fact that a witness' testimony may to some extent be contradictory does not prevent its constituting substantial evidence. Inconsistencies in testimony are questions for [the fact finder]. The testimony of a single witness may be considered sufficient although the testimony may be inconsistent.

(Citations omitted). *Id.* at 121[1–4].

Appellant's attack on Mr. King's credibility focuses on two points in Mr. King's testimony. First, Mr. King provided contradictory testimony regarding the use of his Triumph TR–7 automobile. Second, Mr. King admitted a discrepancy between his deposition, in which he stated he had been laid off of work, and his trial testimony, wherein he admitted that he voluntarily quit his job. These inconsistencies in the testimony of Mr. King are not destructive contradictions as they do not go to any vital point or element of the offense of stealing by coercion. *State v. Washington*, 383 S.W.2d 518, 522 (Mo.1964). Therefore, this situation is strictly a question of credibility which is for the fact finder, the trial judge. Appellant's first point is without merit.

■ In his second point, appellant contends the trial court erred when it excluded proposed testimony from a witness concerning civil suits against Mr. King because said evidence went to the credibility of the State's main witness. In particular, appellant wanted to show that Mr. King had not disclosed during his testimony a prior residence and the fact that he was sued in the past for collection of unpaid property taxes. The trial court sustained the State's objection to the proposed witness on the ground that the testimony would be "too far afield."

The trial court is vested with broad discretion in ruling on questions of relevancy of evidence and, absent a clear showing of abuse of discretion, we will not interfere with the trial court's ruling. *State v. Brown*, 718 S.W.2d 493, 493–94[1] (Mo. banc 1986). Further, a trial court has broad discretion to limit attacks on general credibility and attempts to elicit irrelevant, collateral, or stale matters. *State v. Russell*, 625 S.W.2d 138, 141[6] (Mo. banc 1981).

We find no abuse of discretion by the trial court. We are mindful of the fact that the trial court, as trier of fact, knew what the proposed testimony would be, by way of appellant's offer of proof, but still decided to exclude the witness' testimony. As such, we will defer to the trial court's finding regarding the relevancy of the proposed testimony. Point denied.

■ In his third point on appeal, appellant argues the trial court erred in allowing the prosecutor to point out in closing argument that appellant exercised his Fourth Amendment right as to unwarranted searches. Appellant did not object to this argument and asks this court to review the point for plain error.

Without addressing whether the argument was improper, we note that *State v. Leigh*, 580 S.W.2d 536, 545[13] (Mo. App. 1979), is instructive on this point:

In a jury-waived case a certain amount of latitude in the admission of evidence is allowed, and even where error is made in the admission of some evidence, except where the trial court relied on that evidence in arriving at its findings of fact and conclusion of law, such error is ordinarily held to be non-prejudicial. This is because the rules of exclusion in the law of evidence as applied in a court of law are largely as a result of the jury system and serve the purpose of keeping from the jury all irrelevant and collateral matters which might tend to confuse them or mislead them from a consideration of the

real question in issue; when an action is to the court sitting without a jury, the rules of exclusion are less strictly enforced.... It is assumed that the trial court will not be confused or misled by what is irrelevant and incompetent.

(Citations omitted). The *Leigh* holding was applied in *State v. Harris*, 710 S.W.2d 324, 326 (Mo. App.1986), where it was alleged that the State made an improper closing argument. The *Harris* court concluded: "Even though the ruling was not proper, there is no reason to believe the judge was swayed by this argument. No error, plain or otherwise, resulted from the argument and ruling." *Id.* Point denied.

In his fourth and final point on appeal, appellant maintains that the trial court erred in rendering a verdict of guilty because said verdict is against the weight of the evidence. It is not within the province of this court to weigh the evidence where there is substantial evidence to support the findings of the trier of fact. *State v. Washington*, 383 S.W.2d at 522[6]. Reviewing the record on appeal, we find the trial judge's decision has substantial evidentiary support. Appellant's fourth point is without merit.

Judgment is affirmed.

CRANDALL and GRIMM, JJ., concur.